HARRY S. WHITE *et al.*

*v.*

HARRY WHITE *et al.*

1. RESCISSION—*conveyance obtained through fraud.* Where a person, having gained the confidence of the owner of valuable real estate, by false representations and working upon his fears, such owner being over seventy years old, and infirm in mind and body, induced him and his wife to convey all his property to him, for the expressed consideration of giving the grantor a support and the payment of $200 in funeral expenses, but under the promise and assurance that he would immediately convey the same to the grantor's wife, representing that the grantor's children and heirs were about to take steps to

have a conservator appointed, and the grantee refused to execute the convey-
ance to the grantor's wife, and paid nothing for the land, but in a few days
after sold and conveyed the property to the heirs of the grantor for $1500, they
having notice of the facts by the original grantor's possession, if not otherwise,
it was *held*, that no court could sanction such a fraud, and all the conveyances
were held properly set aside on bill filed by the original owner so defrauded.

2. NOTICE—*of equity, by possession.* Where the grantors of real estate re-
main in its possession, all persons purchasing the same from the grantee are
chargeable with notice of all the claims of the grantors, both legal and equit-
able, and if the original conveyance is procured by fraud and deceit, such
purchasers are held to notice of such fact, and can not be protected as inno-
cent purchasers.

APPEAL from the Circuit Court of Kane county; the Hon.
HIRAM H. CODY, Judge, presiding.

Messrs. BOTSFORD & BARRY, for the appellants.

Mr. IRUS COY, and Mr. W. S. COY, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

The bill in this case charges that appellant Williams ob-
tained a conveyance of a valuable farm in Kane county, also,
a house and lot in Kaneville, in this State, from appellees,
through fraudulent representations; that the deed was not de-
livered by them to Williams; that he paid no consideration
therefor; that the other appellants, knowing that the convey-
ance was obtained by fraudulent means, and knowing all of
the facts, and aiding Williams in procuring the deed, took
from him a conveyance of the premises. On a hearing, the
court below rendered a decree setting aside the deed from ap-
pellees to Williams, and the deed from him to appellant Harry
S. White, and defendants appeal to this court, and ask a
reversal.

Appellee Harry White, it appears, settled on the farm in
controversy some eight years before it was offered for sale by
the government. He then purchased it, and resided thereon
until his children were raised and had left him. His wife
having died, he rented his farm to a nephew, and for a time

lived alternately with his children and two brothers. He so lived for about five years, when he married Louisa A. White, the other appellee. Whilst living with his brother George, he became acquainted with Williams, and became attached to him, and gave him his entire confidence. Harry White was then seventy years of age, and had been stricken with paralysis, and moved about with difficulty. Williams was a single man, and worked by the month on the farm for George White, the brother of appellee, and had no property except a horse. About that time Harry White married his present wife, and afterwards purchased the house and lot in Kanesville, and moved thereto. Some three months afterwards, Williams represented to Harry White that his children and brothers had conspired, and had frequent meetings at his brother George's, and had determined to have a conservator appointed to take charge of him and his property. White asked what he had better do, and Williams advised that he convey his property to one Castar, and that he could convey it to his wife. Williams, a few days afterwards, informed him that Castar refused to have anything to do with the matter, as he feared his buildings would be burned if he did. Williams then proposed to act in the matter. Mrs. White, it seems, objected to having the property thus conveyed to her; said she was willing to take the house and lot, but did not want the farm. White said he was willing to trust her to act fairly with his children, but was unwilling to trust them to act fairly by her. She, however, consented to take both pieces of property.

The proof further shows, that about the first of February, 1874, Williams came to White, and said: "By ——, Uncle Harry, I have turned out to save you, or I would not have come out on such a stormy night. They are going to commence on to-morrow morning, and we must do our business, and get ahead of them. George is going to Aurora in the morning, and they are going to start the thing." He then proposed that they should go to Batavia and have the deeds made. White wanted the deeds made at home, but Williams

urged that Batavia was near the county seat, and the deeds would have to be recorded. It was finally agreed to go there, and have both deeds then made. All three went to Batavia the next morning, and found a justice of the peace. Whilst the justice was writing the deed from White to Williams, he asked what was the consideration, when Williams replied, that "Uncle Peter Castar told me that a good consideration would be, the support of Mr. White, his necessary medical attendance, and $200 funeral expenses." White said, "if that made a good consideration, he was satisfied," and that was inserted as the consideration.

The deed having been written, it was signed by White and his wife, acknowledged and certified. It was left with the justice, as appellees swear, to copy from in the description of the land in the deed from Williams to Mrs. White, and to be kept by him until that deed was made. White and wife went to the hotel for dinner, and there meeting Williams, he asked if everything was satisfactory, and Mrs. White replied, thus far it was. He then went to the office, obtained the deed to him, and took it to Geneva and filed it for record, and refused to execute a deed to Mrs. White. On the contrary, he, for the consideration of $1500, conveyed to Harry S. White, four days after he obtained the deed, to hold in trust for himself and his brothers and sisters.

The evidence shows that appellee Harry White was out of debt; that the farm was worth about $20,000, and the house $1400. Although the evidence is inharmonious, and much of it irreconcilably contradictory, we think it establishes the facts as we have stated them. Appellants disclaim all knowledge of the transaction between Williams and their father, except as disclosed by the deed, and claim to be innocent purchasers without notice and for value; that they have paid $1500, and take the property subject to their father's support, and they should be protected in the purchase.

That Williams was guilty of such fraud as should set aside the conveyance to him, seems to us to admit of none, the

slightest doubt. He seems to have played on the fears of appellees, and the more successfully as we infer there had been some talk of procuring the appointment of a conservator. He made false representations as to the purpose of his children, but whether at their instance and for their benefit, or for his own profit, does not appear. Here was property worth over $20,000, to which he obtained the title, and the only consideration was the future support of a man over seventy years of age. He paid nothing—was able to pay nothing. The relations of the parties were not such as to induce appellee to donate such a sum of money to him, and it appears that such was not the design, as he said he was willing to trust his wife to do what was right by his children, and there was fraud in failing and refusing to convey, as was agreed, to Mrs. White. White would never have willingly conveyed the property in this manner to Williams. He only accomplished his purpose by obtaining the deed to him without the consent of the grantors, and then refusing to convey to Mrs. White. The deed was obtained without any consideration paid, and by deceit, fraudulent pretenses, and the most shameful practices in appealing to the fears of the grantors, and the transaction can find no sanction in a court of justice; nor do appellants pretend to justify or maintain its honesty, or claim that the means employed by Williams were fair or honest.

Then, were appellants protected as innocent purchasers for value? Most clearly they were not. The grantors were in possession, and all persons purchasing the property must be held charged with all of their claims, legal and equitable. If appellants did not employ Williams to thus procure the title, or if they had no actual notice of his fraud in obtaining the conveyance, they took it charged with notice as though they had seen their father, and he had informed them of all the particulars of the fraud perpetrated by Williams; and it is for the reason that a party purchasing real estate in the possession of another should see him, and learn what claim he has. When a person is in the actual possession of lands, the pre-

sumption is that he owns or has some legal claim to it, and the person buying it does so subject to his claims. It then follows, that as appellees could have set up the fraud against Williams, appellants taking charged with notice, they can urge the fraud with the same effect against them.

From all the evidence in the case, it may well be doubted whether Harry White, the complainant, was capable of transacting his business, and whether the deed should not be set aside for that reason.

Finding no error in the record, the decree of the court below is affirmed.

*Decree affirmed.*