ANNIE WILLIAMS *et al.*

*v.*

SHERMAN C. SPITZER.

*Opinion filed June 16, 1903—Rehearing denied October 7, 1903.*

1. APPEALS AND ERRORS—*when freehold is not involved.* A freehold is not involved on appeal from a foreclosure proceeding, where the sole issue is whether or not certain portions of the premises are subject to the lien of the trust deed.

2. MORTGAGES—*possession is notice to mortgagee of possessor's rights.* Open and visible possession of land by an equitable owner charges a subsequent mortgagee with notice of such owner's rights, and the mortgage lien is subject thereto.

3. REAL PROPERTY—*when rights of purchaser cannot be changed by subsequent arrangements.* The rights of one who purchases and takes possession of lots relying upon a recorded contract between his vendor and the owner of the legal title, giving his vendor the right to absolute title upon compliance with his part of the contract, cannot be affected by any subsequent arrangement between his vendor and such owner, to which he is not a party.

4. PRACTICE—*exceptions to master's conclusions of law are unnecessary.* Exceptions to the master's conclusions or recommendations with reference to questions of law are not necessary in order to raise the question whether the decree is justified by his findings of fact.

*Spitzer* v. *Williams,* 98 Ill. App. 146, reversed.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

JOHN C. TRAINOR, for plaintiffs in error.

OLIVER & MECARTNEY, for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

On May 7, 1889, John G. Earle executed a contract for the sale of over two hundred lots in Elsdon, in Cook county, to August Jernberg for $40,000. Jernberg gave his five promissory notes for the purchase price, two being for $5000 each, payable in one and two years, and three being for $10,000 each, payable three, four and five years after date, respectively. The notes drew interest at six per cent, with eight per cent after due. Earle agreed to convey the lots by warranty deed on payment of the consideration, and it was provided that Jernberg might obtain a deed to any one or more of the lots on the payment of specific amounts, with interest thereon, for each lot, the rates for lots on Millard avenue being fixed at $175 each. It was intended that Jernberg should sell lots, and the contract provided that in case of his default in payment such default should work no forfeiture of lots previously conveyed or contracted for by him, and that the purchasers might obtain deeds from Earle on payment to him of the amounts fixed for the respective lots they might have purchased from Jernberg, with interest thereon. Edward Williams had been in possession of lot 9, in block 7, on Millard avenue, since March, 1887, as a tenant of Earle, and on May 27, 1889, he bought said lot and the adjoining lot 10 from Jernberg for $550, taking a contract for a conveyance. He paid $150 cash and gave four notes of $100 each, payable in one, two, three and four years, respectively, with interest. Williams took possession of both lots as purchaser, and continued to occupy the cottage on lot 9 and used lot 10 as a garden. He made improvements on the premises amounting to about $200. A year later, on May 7, 1890,.

he had paid $100 besides the cash payment and the interest due, making $250 and interest paid on the lots. Jernberg had paid Earle $5000 on the purchase money and the interest on the whole amount then due, and on that day, by mutual agreement, Earle and Jernberg changed their arrangement and agreed to take up the contract and that Earle should convey the property to Jernberg, who was to secure the unpaid purchase price by trust deed.    Earle conveyed the lots, except a few which had already been conveyed, and Jernberg executed a trust deed to John Milton Oliver, as trustee, securing his notes, amounting to $35,000, in the same amounts and due the same as under the original contract.    Williams was in possession of the lots purchased by him and was living in the house.    The full purchase price of the lots was paid to Earle.    Williams died February 3, 1893, leaving the plaintiff in error Annie Williams, his widow, and the plaintiff in error Ella Williams, his adopted daughter.    All taxes on the lots from 1890 to 1898 were paid by Edward Williams or plaintiffs in error.    Jernberg delivered to plaintiff in error Annie Williams a warranty deed to lot 9 and to Ella Williams a warranty deed to lot 10, both dated May 27, 1889, acknowledged June 5, 1893, and delivered and recorded August 5, 1893.    Plaintiffs in error had no actual notice of the trust deed.    Jernberg paid the first two notes, of $5000 and $10,000, respectively, secured by the trust deed, and paid $5000 on the third note, due May 7, 1893, and the interest.    The trust deed contained provisions for releasing lots sold by Jernberg and paid for, which were similar to those in the contract.    It appears from the abstract that some lots were released, but it does not show what lots or how many.    Sherman C. Spitzer, defendant in error, became the owner of the notes secured by the trust deed, and together with John Milton Oliver, the trustee, filed a bill in the circuit court of Cook county to foreclose the trust deed, making plaintiffs in error defendants, with others.    Plaintiffs in error answered the

bill, setting up the purchase and their possession of the lots, and disputing that the lots were subject to the lien of the trust deed or that they ought to be sold to satisfy the unpaid notes. The issue was referred to a master in chancery, who took the evidence and reported the same, with his conclusion that the lots were subject to the trust deed. He recommended a decree including them in a sale to satisfy the balance due. The court entered a decree finding that the objections of plaintiffs in error to the report were well taken and ought to be sustained and that the trust deed was not a lien on the lots and dismissing the bill as to plaintiffs in error and as to said lots. The other premises subject to the trust deed were sold, and there was a deficiency of $1000, for which a personal decree was entered against Jernberg. On appeal by the defendant in error, the Branch Appellate Court for the First District reversed the decree as to said lots and remanded the cause, with directions to enter a decree ordering them sold to satisfy the deficiency.

It is first contended by plaintiffs in error that the Appellate Court had no jurisdiction of the appeal from the circuit court for the reason that a freehold was involved. The sole issue was whether the lots were subject to the lien of the trust deed, and there was no pleading which involved a question of title. The question whether the lien attached to these lots did not involve a freehold. *VanMeter* v. *Thomas*, 153 Ill. 65.

Jernberg purchased all the lots from Earle under a contract, by which he acquired an absolute right to a conveyance upon complying with the contract on his part. The contract provided for sales by Jernberg and secured certain rights to the purchasers of lots from him. When Williams bought lots 9 and 10 from Jernberg in pursuance of the terms of the original contract, he became, in equity, the owner of the lots, subject to the rights of Earle and Jernberg under the contracts. (*Lombard* v. *Chicago Sinai Congregation*, 64 Ill. 477.) He had a

right to rely on the terms of the contract between Earle and Jernberg, which was duly recorded, and by the terms of his contract with Jernberg had a right to a deed on payment of $550, conditioned that Jernberg should pay to Earle $350, with interest, or $175 and interest for each lot, and in case of default of Jernberg, Williams would be entitled to a deed from Earle on the payment of $175 for each lot, with the interest thereon. Earle and Jernberg could not, by any subsequent arrangement to which Williams was not a party, vary or affect his rights in any way. He was in possession as purchaser when the arrangement was changed and the title was conveyed to Jernberg and the unpaid purchase price was secured by the trust deed. Earle was bound to make inquiry as to the rights of Williams, and is chargeable with all information which he would have obtained by such inquiry. The open and visible possession of land by the equitable owner is sufficient to charge a mortgagee with notice of the rights of such owner, and the mortgagee will take the lien subject to the rights of the person in such possession, whatever they may be. (*Harris* v. *McIntyre*, 118 Ill. 275; *Joiner* v. *Duncan*, 174 id. 252.) Defendant in error occupies the same position as Earle. The possession of Williams was notice that he was purchaser of the lots from Jernberg for $550; that he had paid $250 of the purchase price, and would be entitled to a deed upon the payment of the remainder of such purchase price if Jernberg paid Earle for those lots. Any inquiry would have informed Earle of these facts, and he was bound to take notice of them when he made the conveyance and took the trust deed. At that time Jernberg had paid to Earle $5000 of the principal and the interest then due. It does not appear what particular money had been paid to Earle or that it was the same money paid by Williams, but it was not necessary to trace the particular bills or identify the money so paid. We think that in equity Williams was entitled to have his $250 regarded as included in the

money paid. The lots owned by Williams were paid for in full to Jernberg, and the most that Earle could claim under the trust deed, in any event, would be the balance of $300, with the interest thereon. After the trust deed was executed, Jernberg paid $20,000 of the principal and interest on the remainder,—many times the amount necessary to pay for the lots,—and the trust deed provided for the release of lots upon payments of specific sums. In our opinion it would be inequitable to apply the payments of these large sums in such a way as to leave these lots subject to the trust deed, in view of the circumstances and the provisions of the contract and trust deed. Under the contract, which could not be changed by Earle and Jernberg so as to affect the rights of Williams without his assent, Williams became entitled to a conveyance of the lots upon payment to Jernberg, on condition that Jernberg should pay the amount to Earle. The purchase price of the lots was paid to Jernberg, who paid in all $20,000 to Earle. We think that the price of the lots should be included in the payments made to Earle, and that the lots did not remain subject to the lien of the trust deed.

It is urged by defendant in error that plaintiffs in error are bound by the master's report because no exceptions thereto were filed in the trial court. The decree recites the sustaining of objections by the court to the master's report, but no exceptions appear in the files. It is not necessary that there should be any exceptions to the opinions of the master upon questions of law or his recommendations relating to such questions. Exceptions must relate to findings of fact, and exceptions are not necessary to raise the question whether the findings of fact justify a particular decree.

We conclude that the Appellate Court was wrong in reversing the decree of the circuit court. The judgment of the Appellate Court is reversed and the decree of the circuit court is affirmed.          *Judgment reversed.*