Fidelity Trust and Savings Bank, Defendant in Error, v. Theodore S. Williams et al.
Ida Connell and James Connell, Plaintiffs in Error, v. Fidelity Trust and Savings Bank et al., Defendants in Error.

Gen. No. 38,167.

Opinion filed April 22, 1936. Rehearing denied May 5, 1936.

SMITH & WALLACE, of Chicago, for plaintiffs in error; HUBERT E. PAGE, RAYMOND M. SMITH and R. H. WEHMHOFF, all of Chicago, of counsel.

URION, BISHOP, SLADKEY & BOUTELL, GEORGE GIL-LETTE and EDMUND J. REYNOLDS, all of Chicago, for de-

fendants in error; ELMER M. LEESMAN and JEROME J. SLADKEY, both of Chicago, of counsel.

MR. JUSTICE HEBEL delivered the opinion of the court.

This suit was a bill in equity to foreclose a trust deed. The defendant, Ida Connell, filed a cross complaint in which she set out that the title to the property in question, prior to the execution of the trust deed, was obtained from her by fraud of which the complainant in the proceeding had constructive notice. A decree was entered in the foreclosure proceeding, and by this writ of error Ida Connell and James Connell seek to have the record reviewed.

The defendant and cross complainant, Ida Connell, in 1912 purchased the premises known as 1113 Albion avenue, in Chicago. She erected thereon a large dwelling house, where she and her husband, James Connell resided until 1920. Her daughter Sadie was married to Michael F. Schiavone, who came to reside with the Connells and they leased the premises about 1923. Michael Schiavone and his wife resided there as tenants of Ida Connell up to the time of his death in 1929, he paying $200 per month rental.

Michael Schiavone in 1926 was a banker and real estate operator in Winnetka. He was a stockholder in the North Shore Trust & Savings Bank and also a stockholder and director in the Fidelity Trust & Savings Bank. Mrs. Connell had great confidence in Michael Schiavone, her son-in-law, and believed him to be a successful business man. He furnished the home lavishly.

Early in April, 1926, Michael Schiavone represented to Mrs. Connell that he had a purchaser for the Albion avenue property, in which he and his wife then resided as tenants. He explained that in order for him to make the deal and close the sale, it was necessary

that she execute a deed in blank, which he then presented and she signed and delivered to Schiavone. Mr. Connell, her husband, signed the deed later, upon the same representations by Schiavone. At the time the deed was signed no grantee was named, or description of the property inserted in the deed. Without the knowledge of Mr. and Mrs. Connell, the name of Sadie Schiavone, her daughter and wife of Schiavone, was inserted as grantee in the deed, and it was acknowledged on April 6, 1926, before a notary public.

From the testimony, it does not appear that Sadie Schiavone at any time knew, or had notice of the deed until 1929, after her husband, Michael Schiavone, had committed suicide. The taxes for 1925, on the property were paid by Mrs. Connell on August 3, 1926, after the trust deed—the subject of this controversy—for the alleged loan was acquired by the North Shore Trust & Savings Bank. She paid the taxes for 1926 on July 26, 1927. Mr. Schiavone paid the 1927, 1928 and 1929 taxes.

On April 15, 1926, Michael Schiavone requested a loan on the premises from the North Shore Trust & Savings Bank, for his own benefit, in the sum of $30,000. Officials and agents of the bank were driven by Michael Schiavone to the premises on the same day. The representation of Schiavone that it was his home seemed to satisfy the bank, at that time, that Michael Schiavone was the real owner of the premises. At the time the officials of the bank inspected the premises no member of Mr. Schiavone's family was present except himself. The house was elaborately furnished and apparently occupied by his family—who were then absent. During this month of April, Ida Connell was making her home there with the Schiavone family, recovering from a recent serious operation.

After an inspection of the premises, the property was considered by the bank sufficient security for a

$30,000 loan to Michael Schiavone, but he was advised by officials of the bank that for reasons not made clear, it would not be discreet for the bank to make a loan direct to him. The bank suggested that the title to these premises be conveyed to some third party, who should make the application and sign the notes and trust deed to secure such loan. Thereafter, Theodore S. Williams was selected either by the bank or by Schiavone or both as such a party, and Williams consented to act, for no benefit of his own, but as an accommodation apparently to Schiavone and the bank or one of them.

Michael Schiavone submitted to Sadie Schiavone on April 16, 1926, a deed in blank for her signature without any explanation. She had been accustomed to signing deeds in blank for his use in connection with his Winnetka real estate subdivision, and his request for her to sign a deed in blank was apparently no surprise to her. She did not have knowledge, and nothing was said to her by Schiavone, that he intended by said deed to convey the Albion avenue property where they then resided as tenants. Sadie Schiavone signed the deed in blank form. It was acknowledged on April 16, 1926, but the deed itself bears date as of April 22, 1926. The description of the Albion avenue property was inserted in the deed after Sadie Schiavone had signed in blank, and also the name of Theodore S. Williams, as grantee, without the knowledge or consent of Sadie Schiavone.

Michael Schiavone delivered the deed to the bank and requested the bank to have same filed for record. The bank required Michael Schiavone and Theodore S. Williams each to make a written application for this loan on the Albion avenue property and the applications were made on identical forms under date of April 19, 1926. Each application was for $30,000 loan on the Albion avenue property, and on the same terms, in compliance with the bank's request.

On April 24, 1926, Theodore S. Williams and his wife signed, executed and acknowledged in due form the trust deed here in evidence to the Chicago Title & Trust Company, covering the premises in question, and now the subject of this foreclosure. In the trust deed, these premises were conveyed to secure the payment of certain principal notes of even date, signed by Theodore S. Williams and his wife, payable to bearer, amounting to the principal sum of $30,000. None of these notes was signed by Michael Schiavone but he was required by the bank to guarantee such notes and did so by a special instrument, in writing. On April 24, 1926, Theodore S. Williams also executed in due form a power of attorney to Michael Schiavone authorizing him to sign the name of Williams to all vouchers, instruments, checks and other paper required or necessary in or about the payment of the loan of $30,000 upon these premises. This power of attorney was acknowledged on May 11, 1926, by Williams before the same notary public that took the acknowledgment of Williams and his wife to the trust deed. The trust deed was filed by the bank for record on May 3, 1926, as Document No. 9261741. Also on that same day the deed of Ida Connell and her husband to Sadie Schiavone and the deed of Sadie Schiavone and her husband to Theodore S. Williams for the same premises, which were received from Mr. Schiavone and filed for record by the bank as Documents Nos. 9261739 and 9261740.

Complainant's Exhibits 11 and 12, being the two deeds last mentioned, had been handed by Michael F. Schiavone to an officer of the North Shore Trust and Savings Bank some time between April 22, and May 3, 1926. In the meantime, the bank had the title to the premises examined by the Chicago Title & Trust Company, and under date of May 6, 1926, its letter of opinion was delivered to the bank in which it found the title on May 3rd, to be good in Theodore S. Williams, subject to the "rights or claims of parties in possession

not shown of record in questions of survey.'' The objection was subsequently waived by the Chicago Title & Trust Company, upon Michael F. Schiavone's written certification that the property was owned by Williams.

On May 11 and 12th, the North Shore Trust & Savings Bank paid out all the money so loaned, without any knowledge, it is claimed by the bank, that Ida Connell and James Connell claimed any right, title or interest in the premises. In fact, the bank claims that it first heard of any such claim or interest in the property after the bill to foreclose was actually filed.

Williams, the trustee, testified he never received any money or any consideration for the notes he and his wife signed, secured by the trust deed in question. When Williams received the cashier's check of the bank in the sum of $10,000, it was handed to him by Henry Herman Thurow, an assistant cashier of the North Shore Trust & Savings Bank with the request that he indorse it, which Williams did. Thurow then took back the check and did not give Williams anything for it. Williams also received from Thurow a cashier's check for $20,000. This, Williams also indorsed and handed back to Thurow. The proceeds from the first check for $10,000 were used in part for the benefit of Michael F. Schiavone and in part by him in cleaning up the title by paying a balance due on and removing a first mortgage lien on the property, for something less than $5,000. The $10,000 check was used to purchase two cashier's checks for $5,000 each, issued by the Lake Shore Trust & Savings Bank on or about May 13, 1926, made payable to Theodore S. Williams, but indorsed by him in blank and paid to the account of Michael F. Schiavone through the Fidelity Trust & Savings Bank. A check for $20,000 dated May 11, 1926, payable to Theodore S. Williams was delivered to the payee indorsed by him and deposited in the North Shore Trust & Savings Bank to the credit

of the account of the Lake Towns Improvement Co., Michael F. Schiavone. On May 12, 1926, Michael Schiavone delivered to the bank the note signed by Ida Connell and James Connell, dated January 26, 1914, for the sum of $5,000, duly marked "paid" and "cancelled" May 12, 1926, by the Foreman Trust & Savings Bank. This note had been secured by a trust deed on the premises, and was likewise marked "cancelled" bearing date of January 26, 1914. This note had been reduced and paid by check of M. F. Schiavone May 12, 1926, for $3,052.50 through the North Shore Trust & Savings Bank. Since April 15, 1926, the North Shore Trust & Savings Bank made no further inquiry of any one in possession of the premises and the bank paid out the money on this loan about May 12, 1926.

Certain of the assets and liabilities of the North Shore Trust & Savings Bank were taken over later by the Fidelity Trust & Savings Bank under an agreement dated October 30, 1926, among which assets was the Theodore S. Williams loan of $30,000, due October 26, 1931. The Fidelity Trust & Savings Bank at that time had employed Mr. Thurow and Mr. Dose, former officers of the North Shore Trust & Savings Bank. Each of these officers had acted for the bank in making the loan to Schiavone. Each one of these persons began acting in like capacities for the Fidelity Trust & Savings Bank before the bank accepted the loan and trust deed.

One of the important questions to be considered in this lawsuit is whether the Lake Shore Trust & Savings Bank had notice or knowledge of any of the facts and circumstances that led up to the execution of the Williams' trust deed. The whole theory hinges largely on whether or not the facts are such as to demonstrate that the Connell deed to Sadie Schiavone was without her knowledge, without consideration, and was never delivered or accepted by the parties named in this deed.

The facts clearly disclose that Michael F. Schiavone was really instrumental in obtaining the loan on this Albion avenue property, and in order to determine the value of the property, certain officers of the bank and Michael Schiavone visited the premises and inspected the improvements. At that time it was indicated to the officers of the bank that Michael Schiavone was the then owner, and he so indicated in his application filed with the bank for the loan. The deed which was afterwards presented to him by the bank, indicated that it was a deed from the Connells to Sadie Schiavone, the wife of Michael Schiavone. This of itself was notice that Michael Schiavone did not have title to the premises and that Sadie Schiavone, at least appeared to have some interest in the premises, and it was the suggestion of the bank that it might be well to have some third person take title and sign the notes and trust deed securing payment.

It further appears from the facts that a deed was presented by Michael Schiavone from Sadie Schiavone to Theodore S. Williams, and that Williams and his wife thereafter signed the notes and trust deed securing payment. It is admitted by the defendant, North Shore Trust & Savings Bank, that Williams, in the execution of the papers, was but a dummy, and to that extent, of course, the bank knew the conditions under which the title was obtained. When we follow up this transaction we find that the checks issued by this bank were made payable to Williams, and by him indorsed and the fund used to satisfy the balance of a mortgage of $5,000, which was signed by the Connells to secure their note, and more than $20,000 was placed to the credit of Michael F. Schiavone in his account at the bank.

Also from the facts as they appear, it is established that Sadie Schiavone was the legal holder of title to the property in question. There is no pretense that her interest in the property was ever investigated by

the bank, and it is established that from the opinion of title of the Chicago Title & Trust Company, the title to the property was subject to the parties in possession. Of course, Sadie Schiavone was the wife of Michael Schiavone; still that fact does not excuse the bank from making an investigation as to her interest in the property, and as to whether or not she was interested in the fund of $30,000 secured by the trust deed signed by Williams.

We know of no law to the effect that because a woman holds title to a piece of property, her husband may make application for a loan and receive the benefit therefrom, without notice to her of his intention to do so. This also applies to the bank, as it had knowledge that Sadie Schiavone had an interest in this property and that title was conveyed, as it admits, to a dummy —Williams—and it should have made an investigation to determine what rights Sadie Schiavone had in and to the property. The deeds were signed in blank, but the purported conveyance of the property from the Connells to Sadie Schiavone and by her to Williams was without knowledge of either Sadie Schiavone or Ida Connell. The facts disclose a rather unusual situation. The circumstances being such as we have indicated, the bank should have made an investigation as to the rights of Sadie Schiavone. Williams to whom the purported title was conveyed asserts no interest in the property.

The significant fact is that Sadie Schiavone, after the execution of the alleged warranty deed conveying the property in question to Williams, remained in possession, and was in possession of the same at the time this case was tried.

The rule of law which seems to control in a like situation is that the retention of possession by the grantor of the property conveyed is notice of his or her interest in the property, and to those claiming under the grantee, and such rule is laid down in the case

of *Ford v. Marcall,* 107 Ill. 136, wherein the court said: "The law is, as this court has declared in *White v. White,* 89 Ill. 460, that when the grantor of real estate remains in possession, all persons acquiring title from the grantee are chargeable with notice of all the claims of the grantor."

This rule was followed and approved in the case of *Ronan v. Bluhm,* 173 Ill. 277, where the court said:

"It is proper we should remark, in answer to the discussion upon the point, that as it is conceded by all parties that the said Thomas Ronan did not deliver possession of the premises in question to the grantee, Carbine, but remained in the open and exclusive occupancy thereof, appellee, Bluhm, is deemed, as matter of law, to have taken the conveyance from Carbine with full notice of all the rights and equities of said Ronan in the premises. *Illinois Central Railroad Co. v. McCullough,* 59 Ill. 166; *White v. White,* 89 id. 460; *Ford v. Marcall,* 107 id. 136."

It is to be noted from what the court said in this opinion that Bluhm was deemed as a matter of law to have taken the conveyance from Carbine, the grantee of Ronan, with full notice as to all the rights and equities of Ronan in the premises.

This rule has been passed upon by the courts of this State, and the law is again discussed and approved in the case of *Rock Island & Peoria Ry. Co. v. Dimick,* 144 Ill. 628. The court in this opinion said:

"The law is well settled in this State, as generally elsewhere, when not changed by the recording acts, that open and exclusive possession of lands, under an apparent claim of ownership, is notice to those subsequently dealing with the title of whatever interest the possessor has in the premises, whether the interest be legal or equitable in its nature. Wade on Notice, sec. 273; *Davis v. Hopkins,* 15 Ill. 519; *Truesdale v. Ford,* 37 id. 210; *Smith v. Jackson's Heirs,* 76 id. 254; *Part-*

*ridge v. Chapman,* 81 id. 137. It has been held also in this State, that if the grantor remains in possession after conveyance, purchasers from the grantee are affected with notice of the grantor's rights in the land. *White v. White,* 89 Ill. 460; *Ford v. Marcall,* 107 id. 136.''

In the case of *Porter v. Clark,* 23 Ill. App. 567, this rule was also approved, and in discussing the subject matter of the litigation, the court there stated what we regard as pertinent in its application to the instant case. This statement is:

''If Porter, knowing as he did that Clark was in possession, had gone to him and inquired as to his rights, he would undoubtedly have been told that the purchase money had not been paid, and that he, Clark, claimed a vendor's lien on the land.''

It has occurred to this court from the statement above quoted that if the North Shore Trust & Savings Bank, by its official, had inquired of Sadie Schiavone as to her rights in the premises by reason of her possession, it undoubtedly would have learned of the rights of the Connells in and to the premises, and the fact that the Schiavones were tenants in possession only by virtue of the right given to them by their landlord— the Connells.

As we have indicated in our opinion, Williams, the grantee in the deed from Sadie Schiavone. paid no consideration and claims no interest whatsoever in the property, of which fact the bank had knowledge.

From the record it is apparent that a fraud was perpetrated by Michael Schiavone, but it is sufficient to say that this fraud would have been discovered if an investigation had been made by the North Shore Trust & Savings Bank and they had learned from Sadie Schiavone what rights she claimed in the property in question. Upon such an investigation the bank no doubt would have learned that Sadie Schiavone

was the grantee in possession; that her rights were those of a tenant under her mother, who was the owner of the property, and the Fidelity Trust & Savings Bank is chargeable with the same notice, and if the bank failed to investigate the reason for the retention of possession by Sadie Schiavone, she had the right to assert and did assert the conditions under which she retained possession, and the right of cross complainant to the property.

The suggestion is made here that there was an unusual delay in asserting any rights as against the complainant in the foreclosure proceeding. There is evidence in the record however that the conditions affecting this piece of property were not discovered until the death of Michael Schiavone by suicide, and the fact that Sadie Schiavone was still in possession as a tenant of the Connells at the time the litigation was instituted is evidence that there was no waiver, because her possession was an indication of her rights in the premises.

For the reasons stated in this opinion, we think under the facts as they appear in the record, the court erred in dismissing cross complainant's cross-bill.

The North Shore Trust & Savings Bank had notice and it is admitted in the brief that Williams was but a dummy; that no consideration was paid by him for the conveyance of the property in question, and from the evidence it is plain that he asserts no right or equity in the property. Then, too, when we learn that the grantor of the real estate to Williams retained possession of the property even until the time suit was begun, this would indicate that she claimed some rights and that she had equities in the premises, and from the record, such rights were by reason of her possession as a tenant of Mrs. Connell, cross complainant. The North Shore Trust & Savings Bank having failed to inquire, is chargeable with the conditions such as

we find from this record, and the Fidelity Trust & Savings Bank, by the purchase of the notes secured by the trust deed, acquired no better right to the property than did the North Shore Trust & Savings Bank.

The court in the entry of the decree as prayed for by the cross-bill should allow the Fidelity Trust & Savings Bank, one of the defendants, the amount used to satisfy the trust deed upon the property securing the note for $5,000, signed by the cross complainant.

The decree of foreclosure is reversed and the cause remanded with directions to the court to enter a decree for the cross complainant as prayed for and in conformity with the reasons stated in this opinion.

*Decree reversed and cause remanded with directions.*

HALL, P. J., and DENIS E. SULLIVAN, J., concur.