(No. 34316.—

M. RAY PEARCE *et al.*, Appellants, *vs.* JESSIE DESPER *et al.*, Appellees.

*Opinion filed June 17, 1957—Rehearing denied September 16, 1957.*

CLYDE E. MITCHELL, of La Salle, and DUANE L. TRAY-
NOR, of Springfield, for appellants, M. Ray Pearce *et al.,*
and ROB J. PURCELL, of Ottawa, for appellant La Salle
National Bank.

KEVIN D. KELLY, of La Salle, McNEILLY & RYAN, of
Peru, and CHARLES G. HASKINS, of Chicago, for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the
court:

After a trial the circuit court of La Salle County dismissed a complaint to foreclose a trust deed recorded as a second lien on approximately 240 acres of farm land owned by Jessie Desper, herein referred to as the defendant, and granted affirmative relief to defendant upon her counterclaim. Defendant had executed two notes and the trust deed securing them incident to a transaction in which she sold to plaintiffs' nominee a 160-acre tract, part of a farm, of which the 240 acres carrying the lien in question constituted the remaining portion. The court found, upon defendant's counterclaim, that the entire transaction was fraudulently induced by plaintiffs, declared void the trust deed, the notes it secured and the warranty deed conveying the 160-acre tract, and decreed restitution. Plaintiffs and a counterdefendant, La Salle National Bank, have appealed.

Since the questions presented turn largely upon the facts it is necessary to review them in some detail. Early in 1950, the defendant Jessie Desper was in financial difficulties. Her 400-acre farm, consisting of the 160-acre tract which she later conveyed to plaintiffs' nominee, and a 240-acre tract which she retained, was subject to a first mortgage to Prudential Insurance Company of America, on which $32,000 was owing, and a second mortgage in the amount of $11,500, held by the plaintiffs, M. Ray Pearce and Frank Koob. In addition, defendant owed Pearce and Koob approximately $5000 which they had advanced to her from time to time. Plaintiffs filed a complaint to foreclose their mortgage of $11,500, through their attorney, Clyde Mitchell.

After the filing of this complaint defendant relied largely upon her brother, Ralph Desper, to handle the negotiations which culminated in the present action. Ralph called on Mitchell, who had previously acted for the Despers in various matters, and was advised that his best course would be to sell the 160-acre tract. He then got in touch with Leonard Travis, a potential purchaser. The evidence shows

that early in 1951 Travis declared himself willing to purchase the tract for $40,000. At the same time, Ralph Desper contacted Harold Brennan who offered to take a first mortgage on the remaining 240-acre tract for $15,000.

The plan was to sell the 160-acre tract to Travis and from the proceeds to pay Prudential $32,000 plus a penalty, which was variously stated in the testimony to be $700, $900, or $1100. It was also planned to mortgage the remaining 240 acres to Harold Brennan and pay plaintiffs their claim of approximately $16,500. Plaintiffs argue that this plan was not feasible because, in addition to the obligations that have been mentioned, defendant admitted other debts aggregating $6000, and would have to pay a commission on the sale of the land, and perhaps on the Brennan mortgage.

There is no evidence, however, as to how pressing the other debts were at that time. Moreover, Travis testified that he might have paid more than $40,000 for the 160 acres. After obtaining the offers from Travis and Brennan, Ralph Desper contacted Mitchell. An agent of Prudential was notified to secure the company's assent to the sale. The agent said that he would have to check Travis's credit and obtain a release from the head office in New York. Ralph Desper testified that a few days later the agent told him that Travis was "O.K." and that he was simply waiting for the release from the head office.

Soon thereafter, Mitchell informed Ralph Desper that Travis had "checked out of the picture," but that Pearce and Koob, plaintiffs, would offer $38,000 for the 160 acres. On March 22, 1951, Jessie Desper executed a warranty deed conveying the 160-acre tract to Alice Otorepec, plaintiffs' nominee. The deed recited that the consideration for the conveyance is ten dollars and that the conveyance is "subject to" the Prudential mortgage. Concurrently with the execution of the deed, Jessie signed a receipt for $1000, which the plaintiffs had made out for her. That receipt reads:

"This will acknowledge receipt of one thousand dollars ($1,000.00) earnest money from Alice Otorepec as nominee for the purchase of my S.W. ¼- 31- 34- 2. Balance due thirty-seven thousand dollars ($37,000.00)." It is not disputed that in addition to the $1000 for which she gave this receipt, Jessie Desper received only $5000 in cash for the conveyance. No further payments were made by plaintiffs or by their nominee.

On April 4, 1951, Jessie Desper signed a trust deed and two notes, each in the amount of $8500, giving plaintiffs a second lien on the 240 acres remaining to her. The papers were given to Ralph Desper by Mitchell with instructions that they be signed. Ralph Desper, accompanied by a notary, Henry Siekierka, went to Jessie Desper's home to have her sign them. Both she and Ralph Desper testified that neither understood that these papers were intended to place a second lien on the remaining 240 acres for the $16,500 owed by Jessie Desper to plaintiffs, but that they believed that they were making a mortgage to a third party to raise the additional sum needed to pay off the Prudential mortgage. Both testified that at the time Jessie Desper signed the papers they were blank. Henry Siekierka testified: "Jessie objected to signing them and she and Ralph were wrangling about something. I was standing on the sidelines and didn't get all the conversation. There was some wrangling between Jessie and Ralph about blank papers but I didn't see it, I couldn't prove it. I didn't look at the papers * * *." Frank Koob testified that he was in Mitchell's office when the papers were prepared prior to their signing by Jessie Desper and that they were all complete.

Defendant's counterclaim alleged that the agreement between plaintiffs and defendant for the sale of the 160-acre tract was that plaintiffs would pay $38,000 cash, but would receive credit for the $16,500 which she owed them; that on the faith of this representation she signed the warranty

deed; that she signed the trust deed and notes in blank believing that they were a mortgage to some third party on the remaining 240 acres to raise the additional money needed to pay off Prudential; that plaintiffs had only paid $6000 cash for the 160 acres and had refused to pay the balance as agreed. The counterclaim prayed that the warranty deed, trust deed and notes be cancelled for fraud and misrepresentation.

It is well settled that where the chancellor has heard the testimony of witnesses in open court, his findings of fact are entitled to great weight and will not be disturbed by this court unless clearly against the weight of the evidence. (*Seifert* v. *Demaree,* 380 Ill. 283, 290.) While both parties devote much attention to the question whether Mitchell was acting as defendant's attorney in this transaction, and whether defendant may obtain relief upon this ground, since it was not asserted in her pleadings, we do not think that these questions are material. We do not see how Mitchell's alleged breach of a fiduciary duty to defendant can affect plaintiffs' position unless it is shown that he acted as their agent in perpetrating a fraud upon defendant. The question, therefore, is whether there was sufficient evidence to support the court's finding that plaintiffs had themselves or through an agent induced defendant to execute the documents through fraud or misrepresentation. On this issue, the burden remains with defendant.

We think that defendant has discharged this burden and that the court's finding of fraud on the part of plaintiffs is sustained by the evidence. We reach this conclusion after considering the whole record, but in particular upon the following salient facts: Mitchell, as plaintiffs' attorney, knew that defendant was looking for a purchaser who would pay cash for the 160-acre tract. He informed defendant that Travis's offer of $40,000 had been withdrawn. Travis testified that after making the offer he went to Florida; that he never personally withdrew this offer, but that he

heard from his attorney that "the deal had fallen through." We need not surmise what occurred to cause this communication. It is sufficient to note that plaintiffs' theory of the understanding reached between themselves and defendant concerning the sale of the 160-acre tract to them, and the execution of a second mortgage on the 240-acre tract, requires an abrupt change of plan on the part of defendant. Defendant and her brother strongly denied having made any such change. Against this denial, plaintiffs are able to point only to their own assertions that they made no attempt to hide the true nature of the transaction from defendant and that defendant well knew the effect of the documents signed by her.

The documents, prepared by plaintiffs, speak a different story. The warranty deed of March 22, 1951, by which defendant conveyed title in the 160-acre tract to plaintiffs' nominee is silent on the question whether plaintiffs or their nominee assume the Prudential mortgage. The words "subject to" do not indicate an understanding that the mortgage was to be assumed. (*Crawford* v. *Nimmons,* 180 Ill. 143, 145.) After Ralph Desper made repeated demands upon Mitchell for payment of the balance of the consideration in cash, Mitchell sent a document to Jessie for her signature, which for the first time, clearly set out an agreement that the $38,000 was to be paid, $6000 in cash and the balance by assuming the Prudential mortgage. Defendant refused to sign this document. The receipt for $1000 tendered by plaintiffs stated, "Balance due thirty-seven thousand dollars." That statement is inconsistent with any theory that the balance was to be paid by assumption of a mortgage, whether it was to be assumed by the plaintiffs or by their nominee.

There is enough evidence in this record to show that defendant understood and was meant to understand that the balance would be paid in cash. In our opinion the court was justified in believing defendant's and Ralph Desper's testimony that the trust deed and notes were presented to

them in blank and that their understanding was that they were meant to effect a mortgage on the 240-acre tract remaining, which would bring them additional cash to pay off the Prudential mortgage.

Plaintiffs argue, however, that even if there were misrepresentations made by them defendant has failed to show in what way her resultant position is less desirable than the one she had in mind—that she has failed to show any damage. They argue that defendant is relieved of the Prudential mortgage which they are now willing to assume if they have not already done so, and that defendant's mortgage to them is not more onerous than the mortgage she intended to execute to Brennan. But plaintiffs cannot fraudulently substitute themselves for the intended mortgagee and maintain that they have placed defendant in an identical situation to that which would have obtained had the mortgage been made as intended. It is well settled that a contract can be avoided as against one who through misrepresentation on his part or on the part of his agent has become a party to it knowing that someone else was intended, or knowing merely that he was not intended to be a party. (*Heart of America Lumber Co.* v. *Belove*, 111 F.2d 535 (5th Cir.); *Kelly A. B. Co.* v. *Barber A. P. Co.* 211 N.Y. 68, 130 A.L.R. 664.) Such a contract can be avoided for fraud even though the fraud does not affect the terms of the contract but merely the parties to it.

Plaintiffs argue, further, that a cancellation of the instruments and restitution can be decreed only if they can be restored in all respects to the same position they occupied before these instruments were executed. They point to the fact that in March, 1951, before these instruments were executed, they had a foreclosure action pending upon the original $11,500 mortgage, and that this action was dismissed and the original mortgage satisfied of record after the execution of the instruments in question. The argument is that if they are to be put back in their original

position as required, (*Rigdon* v. *Walcott,* 141 Ill. 649,) it is not enough that the court decree, as it did here, that defendant return all consideration given by them and pay all her indebteness to them within thirty days, and that the amount so due shall be a lien on the entire 400-acre farm, but that they must be put in the position of having the original foreclosure action still pending. Plaintiffs argue that the lien that they are now given is inferior to the one which they had in March, 1951, in that it comes later in time. In so far as plaintiffs' position now is different from that which they occupied in March, 1951, it is due entirely to a delay in the liquidation of their claims which they voluntarily brought about. The practice of an equity court since the earliest times has always been to give relief when it can do what is practically just, though it cannot restore the parties precisely to the state they were in before the transaction which is sought to be rescinded. *Spence* v. *Crawford* (1939) 3 A.E.R. 271 (H.L.)

Finally, plaintiffs argue that defendant is barred by estoppel and *laches.* This argument is based upon a letter written by Mitchell to defendant, dated April 6, 1951, two days after the execution of the trust deed here in question, and an assignment by defendant to plaintiffs of her interest in a four-year lease covering the 160-acre tract made on April 16, 1951. The argument is that the letter gave notice to defendant that the trust deed she had executed had been recorded as a second mortgage in favor of plaintiffs upon her remaining 240-acre tract, and that having notice of the fact she elected to do nothing until the present foreclosure proceeding was instituted. The assignment of the lease is said to operate as a ratification of the entire transaction. This argument cannot be accepted. A careful reading of the letter of April 6, 1951, shows that it is so worded as to make it difficult to tell whether the mortgage it refers to is the original mortgage on which the foreclosure proceeding was pending when the trust deed was executed, or a

more recent one. It cannot, we think, be taken as notice to defendant that the trust deed she had executed two days before had been recorded as a second mortgage in favor of plaintiffs. This being so, the assignment of the lease on April 16, 1951, did not amount to a ratification.

La Salle National Bank, a counterdefendant, has also appealed from a denial of its motion to dismiss the counterclaim as to it. The bank was made a party by amendment to the counterclaim after the trial. The amendment alleges that the bank holds title to the 160-acre tract as "trustee, under trust designated as trust No. 479," and requests cancellation of a trust deed from Alice Otorepec to La Salle National Bank, trustee under trust "479" as well as cancellation of the other instruments. The bank appeals without having answered or presented any evidence. It objects to having been made a party after the trial. But section 26 of the Civil Practice Act (Ill. Rev. Stat. 1955, chap. 110, par. 26) gives the trial court a broad discretion as to the addition of new parties before or after judgment. (See *Rhodes* v. *Davis,* 374 Ill. 65, 70.) To entitle it to relief, the bank must show that it has been materially prejudiced in having been made a party at that late stage. (*Boddiker* v. *McPartlin,* 379 Ill. 567; *Chicago, Burlington and Quincy Railroad Co.* v. *Commerce Com. ex rel. Brotherhood of R. R. Trainmen,* 364 Ill. 213; *Gulick* v. *Hamilton,* 287 Ill. 367.) There is no such showing.

The bank relies also on the argument that defendant has failed to allege with sufficient particularity what interest it has in the conveyance sought to be set aside. However, a bill of particulars furnished by defendant at its request states that defendant does not know what the interest or relationship of the bank is to this property, but that she believes that the bank holds the naked legal title to the property, as trustee. This statement must be considered as part of defendant's pleadings, and is sufficient, as against a bare motion to dismiss, to constitute the bank a party.

(*Gage* v. *Reid*, 104 Ill. 509, 513.) Moreover, defendant made two attempts to ascertain the precise character of the bank's interest, and on both occasions the bank resisted discovery on the ground that the documents sought were confidential. It is in no position to complain now that the defendant lacked the information it refused to furnish.

The decree of the circuit court was correct and it is affirmed.

*Decree affirmed.*