LIFE SAVINGS AND LOAN ASSOCIATION OF AMERICA, Plaintiff-Appellee, *v.* ADAM BRYANT *et al.*, Defendants-Appellants.

First District (4th Division) No. 83—1145

Opinion filed May 17, 1984.—Rehearing denied July 12, 1984.

Sidney Margolis and Steven J. Goldberg, both of Winston & Strawn, of Chicago, for appellants.

William R. Yowell, of Chicago, for appellee.

PRESIDING JUSTICE LINN delivered the opinion of the court:
Defendants, Adam and Ruth Bryant, entered into a contract

with Katrina, Inc., for the purchase of property in Cook County, Illinois. Defendants paid an earnest money deposit and began making payments to Katrina, which did not hold legal title at the time the contract was entered into. Katrina subsequently executed a mortgage on the property in favor of plaintiff, Life Savings and Loan Association of America, and obtained legal title from the trustee.

Katrina was dissolved, and defendants continued to make mortgage payments to be credited against the balance of their contract price. Upon paying off the contract, defendants ceased making mortgage payments, and plaintiff brought foreclosure proceedings. Defendants counterclaimed to quiet title, asserting priority over the mortgage.

The trial court dismissed the counterclaim, finding that the mortgage was superior. Defendants now appeal.

We reverse the decision of the trial court.

FACTS

On or about December 20, 1965, Adam and Ruth Bryant (Bryants or Vendees) entered into a real estate sale contract with Katrina, Inc. (Katrina or Vendor), to purchase property in Cook County, Illinois. The contract called for a $1,000 earnest money deposit on a total purchase price of $15,500 but contained no payment schedule for the balance owing. The contract did, however, contain the following provisions:

> "This contract is subject to Katrina Inc. [*sic*] ability to purchase the above above mention [*sic*] property and also obtain a mortgage in the amount of $13,500.00 *** in the event said mortgage cannot be obtain [*sic*] with in [*sic*] 45 days from date of contract then this contract becomes null and void and earnest money returned to purchaser.
> * * *
> In case of default of Martgage [*sic*] payment by Katrina, Inc. to mortgage Co. purchaser may make said mortgage payment out of contract payment and recieve [*sic*] credit for same on contract payment."

Katrina did not hold legal title at the time the contract was entered into and obtained neither title nor a mortgage within the 45-day period. With knowledge of these facts, the Bryants began making payments under the contract and entered into possession of the property on January 29, 1966. The Bryants continued in open and notorious possession of the property up to and through January 30, 1967, at which time Katrina executed a mortgage with Life Savings

and Loan Association of America (Life or Mortgagee) in the amount of $12,000 and, with the proceeds thereof, obtained legal title by deed from Oak Park Savings Bank, as trustee. The Bryants never expressly assumed the mortgage, nor did they join in its making. Life had notice of the Bryants' interest in and possession of the subject property at the time it obtained the mortgage from Katrina.

On December 11, 1968, Katrina was dissolved. The Bryants, who had been making mortgage payments on Katrina's behalf prior to the date of dissolution, continued to make payments through October 22, 1982, whereupon, alleging to have paid all amounts due under the purchase contract, the Bryants ceased making mortgage payments, leaving an outstanding balance on the mortgage of $1,254.68. Finding Katrina in default, Life elected to accelerate all sums due under the mortgage and instituted a foreclosure action, naming, among others, the Bryants as defendants.

The Bryants filed an answer with affirmative defenses and a counterclaim to quiet title. In response, Life filed a motion to dismiss, which the trial court granted. In its order of March 9, 1983, the lower court found that the purchase contract contemplated obtaining the mortgage and that the Bryants had therefore subordinated their interest in the subject property to the mortgage. The court ordered that the counterclaim, to the extent that it asserted priority over the mortgage, be dismissed along with the affirmative defenses. That part of the counterclaim seeking to quiet title was let stand. The Bryants filed a motion to vacate the March 9, 1983, order and in denying that motion, the trial court found that there was no just reason for delaying enforcement or appeal thereof. This appeal followed.

OPINION

The single issue before this reviewing court is whether the trial court's finding that the Bryants' interest is subordinate to the mortgage was correct. Two questions are involved in making this determination, namely, (1) what is the nature of the Bryants' interest in the subject property, and (2) does that interest take priority over the mortgage subsequently executed in favor of Life. The answer to these questions lies within the doctrine of equitable conversion and the applicable recording law in Illinois.

We must first determine the relative legal status of the Vendees and the Mortgagee in relation to the subject property. The Bryants claim that under the doctrine of equitable conversion, they became the equitable owners of the property upon execution of the purchase

contract with Katrina on December 20, 1965. Life, Mortgagee, refutes this claim on the ground that Katrina did not have title at the time the contract was executed and that obtaining title was one of the conditions precedent to the Bryants' becoming equitable owners. This specific issue was addressed and resolved by our supreme court over two decades ago in the case *Shay v. Penrose* (1962), 25 Ill. 2d 447, 185 N.E.2d 218. In *Shay*, the court defined the doctrine of equitable conversion as follows:

"Equitable conversion is the treating of land as personalty and personalty as land under certain circumstances. Hence, as between the parties and those claiming through them, when the owner of land enters into a valid and enforceable contract for its sale he continues to hold the legal title, but in trust for the buyer; and the buyer becomes the equitable owner and holds the purchase money in trust for the seller. The conversion takes place at the time of entering into the contract. It stems from the basic equitable principle that equity regards as done that which ought to be done. The doctrine of equitable conversion has been recognized in Illinois, as it has in practically every other jurisdiction, since earliest times. [Citations.]" 25 Ill. 2d 447, 449, 185 N.E.2d 218.

In *Shay*, as here, one party contended that equitable conversion did not apply to a long-term contract for the sale of real estate prior to the time both parties fulfilled any conditions precedent to the contract. The court dismissed this contention, holding that the correct view is that equitable conversion takes place at the instant a valid and enforceable contract is entered into and that the buyer at the time acquires an equitable title. (*Shay v. Penrose* (1962), 25 Ill. 2d 447, 185 N.E.2d 218.) Between vendor and vendee, equity regards the vendee as the owner of the land upon execution of the purchase contract. *Rosewood Corp. v. Fisher* (1970), 46 Ill. 2d 249, 263 N.E.2d 833.

■ Applying the doctrine of equitable conversion to the facts of the instant case, we note that the Bryants, as Vendees, became the equitable owners of the property on December 20, 1965, the date on which they executed the purchase contract with Katrina.

Life next asserts that Katrina's ability to obtain both legal title and a mortgage were conditions precedent to the contract. Life stresses that Katrina did not have legal title at the time it entered into the sale contract with the Bryants and that, because title was obtained only after Katrina executed a mortgage in favor of Life, this first condition precedent was not satisfied. The doctrine of after-

acquired title, codified as section 7 of "An Act concerning conveyances" (Ill. Rev. Stat. 1983, ch. 30, par. 6), does not support Life's view. Section 7 reads as follows,

> "If any person shall sell and convey to another, by deed or conveyance, purporting to convey an estate in fee simple absolute, in any tract of land or real estate, lying and being in this state, not then being possessed of the legal estate of interest therein at the time of the sale and conveyance, but after such sale and conveyance the vendor shall become possessed of and confirmed in the legal estate to the land or real estate so sold and conveyed, it shall be taken and held to be in trust and for the use of the grantee or vendee; and the conveyance aforesaid shall be held and taken, and shall be as valid as if the grantor or vendor had the legal estate or interest, at the time of said sale or conveyance."

Under this doctrine, the prior conveyance results in the acquisition of equitable title by the vendee such that after-acquired title does not inure to the benefit of a subsequent mortgagee who cannot, by the taking of a mortgage, enlarge the bare legal interest given to him by the mortgagor. *Cooper v. Robinson* (1922), 302 Ill. 181, 134 N.E. 119.

In the present case, Katrina acquired title subsequent to the conveyance to the Vendees. The validity of the sales contract was not impaired by Katrina's not having title at the time the contract was executed. (*Madison v. Buehr* (1970), 125 Ill. App. 2d 8, 260 N.E.2d 431.) Under the doctrine of after-acquired title, the condition precedent, that of Katrina acquiring title, was satisfied upon the vendor becoming possessed of the legal estate. When Katrina acquired title, the Bryants' equitable interest thereto attached.

Life asserts further that a second condition precedent, that of obtaining a mortgage within 45 days, was also unfulfilled, thereby preventing the contract from taking effect. While it is undisputed that Katrina did not obtain a mortgage within 45 days, its failure to satisfy this condition, rather than rendering the entire contract unenforceable, served to restore the contract and the mortgage to their original priorities by operating as a waiver or negation of the subordination agreement.

It is well settled that parties to a contract may waive any provisions in the contract and that such waiver can be demonstrated by conduct indicating that strict compliance with the provision will not be required. (*Botti v. Avenue Bank & Trust Co.* (1982), 103 Ill. App. 3d 1052, 432 N.E.2d 295.) A party by his conduct may waive his

right to enforce a contract provision where time as of the essence was originally intended. (*Will v. Will Products, Inc.* (1982), 109 Ill. App. 3d 778, 441 N.E.2d 343.) While nonaction by both parties constitutes a waiver and mutual negation of that particular provision, the rest of the contract remains in force where the parties, by their acts and statements, show that they consider the agreement to otherwise retain its vitality. *Christopher v. West* (1951), 409 Ill. 131, 98 N.E.2d 722.

█ In the instant case, the provision at issue is that which Life claims is a subordination agreement. The terms in the provision state that the contract was "subject to" Katrina's ability to obtain a mortgage in the amount of $13,500, with interest not to exceed 6½%; and that in the event said mortgage could not be obtained "within 45 days" the contract was to become null and void. It is undisputed that (1) Katrina did not obtain a mortgage within 45 days, (2) the Bryants started making payments and Katrina accepted payments after the 45-day period, (3) Katrina did obtain a mortgage on January 30, 1967, over two years from the date of the contract, and (4) the mortgage obtained was in the amount of $12,000, with interest at a rate of 7% per annum. It is clear from these facts that none of the conditions in the subordination agreement were fulfilled. Moreover, the parties, by their conduct, effectively waived whatever subordination agreement may have existed:

> "An agreement to postpone or subordinate a mortgage may be made subject to particular terms or limitations, or it may constitute a contract to subordinate in the future if certain conditions then obtain *** and, if the agreement to postpone a mortgage is made on certain conditions which are not fulfilled, it is ipso facto restored to its priority." 59 C.J.S. *Mortgages* sec. 218 (1949).

Here, the provision at issue constitutes a contract to subordinate in the future if certain conditions then obtained. The conditions, both as to time and as to the specifics of financing, did not obtain. The effect of Katrina's failure to satisfy these conditions was to restore the Bryants' contract to its priority by the mutual negation or waiver of the subordination provision.

The final question to be answered then is, exactly to what priority was the Bryants' interest restored upon negation of the subordination agreement in relation to the subsequently executed mortgage. The answer turns on whether Life, as Mortgagee, was a *bona fide* purchaser such that its interest was protected by the recording act. *Metcalf v. Altenritter* (1977), 53 Ill. App. 3d 904, 369 N.E.2d 498.

A *bona fide* purchaser is one who takes without notice of a prior claim or encumbrance. (*Guard ex dem. Robinson v. Rowan* (1840), 3 Ill. (2 Scam.) 499.) A mortgagee of realty is regarded as a purchaser, and, if the mortgage is supported by consideration and is taken in good faith, the mortgagee will be protected against adverse claims of which it has no notice. (59 C.J.S. *Mortgages* sec. 232 (1949).) Where, however, the mortgagee, at the time of taking the mortgage, has knowledge or legal notice of a prior conveyance, it is not entitled to the protection of a *bona fide* purchaser. (*Fidelity Trust & Savings Bank v. Williams* (1936), 285 Ill. App. 131, 1 N.E.2d 739.) One who takes a mortgage upon property with knowledge, either actual or constructive, of an earlier although unrecorded conveyance of it, takes it subject thereto and will not be permitted by placing his mortgage first on the record to gain priority over the earlier lien. *St. Boniface Building & Loan Association v. Demopoulos* (1939), 302 Ill. App. 614, 24 N.E.2d 171.

In the present case, Life does not dispute that it had knowledge of the Bryants' claim at the time Katrina executed a mortgage in its favor. Nor is it disputed that the Bryants were in possession prior to and at the time the mortgage was taken. Illinois courts have uniformly held that the actual occupation of land is equivalent to the recording of the instrument under which the occupant claims interest in the property. (*Bullard v. Turner* (1934), 357 Ill. 279, 192 N.E. 223; *Beals v. Cryer* (1981), 99 Ill. App. 3d 842, 426 N.E.2d 253.) The open and visible possession of land by the equitable owner is sufficient to charge a mortgagee with notice of the rights of such owner, and the mortgagee will take subject to the rights of the person in possession. *Williams v. Spitzer* (1903), 203 Ill. 505, 68 N.E. 49.

> "Possession by a vendee under a contract of purchase, whether it be personal or by a tenant, is constructive notice of his equitable rights as purchaser, and any one taking a mortgage under such circumstances from his vendor takes subject to his rights. The mortgage lien in such case covers the property only to the extent of the unpaid purchase-money." 1 L. Jones, Mortgages sec. 718, at 1059-60 (8th ed. 1928).

■ ■ Here, the Bryants were vendees in possession under a contract of purchase at the time Life obtained the mortgage. Life had both actual and constructive notice of the Bryants' interest. Consequently, the subsequently executed mortgage was a lien on the property only to the extent of the unpaid purchase price. The words "subject to" in the purchase contract do not indicate an understanding that the mortgage was to be assumed. (*Pearce v. Desper* (1957),

11 Ill. 2d 569, 144 N.E.2d 617.) The mere acceptance of a conveyance subject to a mortgage specified therein creates no personal liability on the vendee to pay off the mortgage, unless he has by contract, expressed or clearly implied, specially agreed to do so. *Lane v. Davis* (1910), 158 Ill. App. 653.

■ In the instant case, the purchase contract between Katrina and the Bryants provided that the Bryants "may make mortgage payment out of contract payment and receive [*sic*] credit for same on contract payment." The Bryants did make mortgage payments on behalf of Katrina prior to and through the time Katrina was dissolved in December of 1968. However, neither this contract provision nor the making of payments constitutes, without more, an assumption of the mortgage. The permissive rather than compulsory word "may" in the contract provision presented the Vendees with a choice as to whether they would make remaining mortgage payments. Moreover, the plain meaning of the provision is that whatever payments the Bryants chose to make were made on behalf of Katrina, the mortgagor, to be credited against the contract purchase price.

Under the applicable law, the mortgage lien on the subject property was only to the extent of the unpaid purchase price. Thus, in the absence of an assumption of the mortgage debt, when the Bryants paid off the contract price the mortgage lien was extinguished, and superior title vested in the Bryants. 91 C.J.S. *Vendor & Purchaser* sec. 106 (1955).

For all the foregoing reasons, we find that the trial court's decision, set forth in its order of March 9, 1983, finding that the Bryants subordinated their interest to the mortgage and dismissing their counterclaim and affirmative defenses, was manifestly erroneous.

We therefore reverse the decision of the circuit court.

Reversed.

JIGANTI and ROMITI, JJ., concur.