Kankakee Federal Savings and Loan Association, Appellant, v. Hyman Arnove et al., Appellees.
Jean Arnove Schwartzberg et al., Appellees, v. Kankakee Federal Savings and Loan Association, Appellant.

Gen. No. 9,852.

Opinion filed February 24, 1943. Rehearing denied April 15, 1943.

C. M. GRANGER and W. C. SCHNEIDER, both of Kankakee, for appellant.

GEORGE L. SHAPIRO and ARNOLD A. ROSEN, both of Chicago, and FRANCIS J. HOUSEHOLTER, of Kankakee, for appellees.

Mr. Justice Dove delivered the opinion of the court.

This cause presents a question of priority between liens, and was transferred to this court by the Supreme Court because no freehold is involved. *Kankakee Fed. Savings & Loan Ass'n v. Arnove,* 380 Ill. 295.

On August 19, 1940, appellant filed a complaint in the circuit court of Kankakee county to foreclose a real estate mortgage on certain premises in the city of Kankakee, executed by Hyman Arnove and Dora Arnove, his wife, dated September 20, 1937, executed October 27, 1937, securing their promissory note of even date for $2,500. The complaint is in the usual form, alleging the execution and delivery of the note and mortgage, default of the makers, and that Jean Arnove Schwartzberg, Kate Charnes and Bessie Glazer, codefendants with the mortgagors, claim some interest in the premises by way of lien, but that such lien, if any, is subordinate to the lien of the mortgage.

The mortgagors answered, denying any default and alleging priority of the lien of the codefendants, who are the daughters of Hyman Arnove and his former wife, Ida Arnove, now deceased. The three daughters, appellees here, filed an answer, claiming a prior lien in the sum of $1,000 each, by way of unpaid legacies under the last will of their deceased mother, who died in 1929. Appellant filed a reply to each of the answers, and later the daughters filed an answer to the reply to their answer, and a counterclaim setting up their claims as to priority. The pleadings also put in issue the question of whether Hyman Arnove is the owner of the premises in fee simple, appellees claiming that under the will of Ida Arnove he was only a life tenant and that the deeds to him from his two sons, the remaindermen, conveyed nothing because their interests were contingent remainders.

On the hearing the court entered a decree finding that Hyman Arnove is the owner of the premises in fee simple, subject to the lien of the unpaid legacies

and to the lien of appellant's mortgage, and finding in favor of appellees on the question of priority between the liens. The decree also finds that the mortgage was in default, and orders foreclosure subject to the lien of the legacies. The mortgagee has appealed from that portion of the decree giving priority to the lien of the legacies. No cross-errors are assigned, leaving the question of priority as the only one for determination.

The evidence discloses that the said Ida Arnove owned the premises in controversy, and on May 13, 1926, she and her husband executed a mortgage thereon to appellant's predecessor to secure a loan of $2,000, payable in monthly instalments of $20 each. The premises are known as the Main Street property. She also owned other real estate, including premises in the city of Kankakee known as the Wildwood Avenue property. She died testate on December 5, 1929. By her last will she devised the life use of all her property to her husband, and, subject to the life estate, devised the Main Street property and the Wildwood Avenue property to two of her sons, Joseph and Isadore, ''provided however, that they shall pay to each of my daughters the sum of one thousand dollars at the death of my husband.'' Hyman Arnove was named in and qualified as executor of the will.

On May 1, 1931, the husband and all the children above named joined in a sale and conveyance of the Wildwood Avenue property, and on August 14, 1931, the two sons, Joseph and Isadore, executed their promissory note for $3,000, payable to the order of themselves, due in five years, and, together with their father and the wife of Isadore, Joseph being a bachelor, executed a trust deed to Sam Charnes, husband of Kate Charnes, as trustee, conveying the premises in controversy, to secure the payment of the note. In October of the same year there were filed in the probate court in the estate of Ida Arnove receipts signed by appellees in full satisfaction of their claims and

demands against the estate and the executor, and the estate was closed. On November 28, 1934, Isadore Arnove and his wife quitclaimed the premises in controversy to his brother Joseph, who, in turn, on April 23, 1935, quitclaimed them to the father, Hyman Arnove.

In September 1937, there being $1,366.78 unpaid on the mortgage to appellant's predecessor, the taxes and special assessments on the premises being delinquent, and there being a mechanic's lien in existence, although not filed of record, Hyman Arnove applied to appellant for a new loan of $2,500 to cover the unpaid balance of the mortgage, the taxes, special assessments and the mechanic's lien. At that time in addition to the unpaid balance of $1,366.78 on the mortgage, the delinquent taxes and assessments amounted to $197.81, the mechanic's lien was for $850, insurance paid by appellant under the terms of the mortgage was $41.40, and there was an expense of $44, including extension of the abstract and recording. As to the claim of appellees that there is no evidence that the mechanic's lien existed, the testimony of appellant's loan manager and the receipted bills of the company which furnished the material and labor, show that such lien was in existence when the new loan was closed. Checks for all these items, except the balance due on the old mortgage, dated the same day the new mortgage was executed, were made by appellant to Hyman Arnove, and by him indorsed and used in paying such items.

The written opinion as to the title, prepared by A. L. Granger, then appellant's attorney, since deceased, mentioned the then existing mortgage of 1926; the legacies as a charge on the property; an ambiguity in the receipts of appellees, on account of the charge not being against the estate in particular, but against the boys, and advised that the abstract should show more specifically that the legacies had been paid. It also mentions the trust deed to Charnes, and the delinquent

taxes and assessments. The testimony of Clifford Mann, appellant's loan manager, and Samuel Shapiro, an attorney who represented Hyman Arnove, is to the effect that those objections were discussed among them and Arnove and Granger at appellant's office before the loan was closed, and that Arnove said the girls were not claiming any interest in the premises, and that Granger said that if there was any such interest it should be subordinated to that of appellant; that Arnove assured the parties that if appellant desired such an agreement it would be furnished, signed by all the parties. Shapiro also testified that in a number of previous conversations, Arnove had told him the girls were going along with him, and that at the meeting at appellant's office the witness added his assurance to that of Arnove; that he had talked with Jean and Kate about it, and that he had a conversation with Jean with reference to whether appellant would want any documents subordinating their interests, if any, and that these documents would be available; and that he thought he had authority to talk for the whole family. Mann further testified that with Arnove's assurances the loan was closed. The trust deed to Sam Charnes and the old mortgage of May 13, 1926, were released at the time the new loan was closed. After repeated demands for the subrogation agreement up to a short time before the foreclosure was started, appellees refused to execute such an agreement.

Arnove testified that Shapiro did not represent him in connection with the loan and denied that either Shapiro or Granger was present when the loan was closed. He testified that he and his wife and the contractors were there, and that Mann never mentioned anything about his daughters. When called as an adverse witness by appellant, he testified he gave the $3,000 trust deed to Charnes because he owed the Legris bank some money; that he thought they would

foreclose and he gave it as protection; that he received no money but just gave it; that he paid the bank and they released him; that he never "took a mortgage with the Legris bank," but had a note there. When asked: "Is it not a fact that this $3,000 note that was given by Isadore and Joseph was to secure the money due under their mother's will?", he replied: "At that time it was given for protection. That's all." Being asked: "Whom were you trying to protect, Isadore and Joe?", he said "Protection for all three, and I signed it." Being shown the trust deed, he at first said he had never seen it, and then said he could not read anything, and that he gave the mortgage in 1931 to protect himself at the Legris bank. He then stated: "I know I signed it. The children came there and I signed it." Appellant's counsel then said he would give him an opportunity to correct his testimony, and on further interrogation, Arnove admitted that in 1930 he had paid the Legris bank all he owed it, and made a complete settlement with the bank; and when asked to explain his testimony that the mortgage was given in 1931 to protect himself against the bank, he replied: "I don't remember nothing," and denied it was given to secure the legacies.

Each of the appellees testified she never received anything from her mother's estate, and, in substance, that she did not remember the circumstances in connection with the signing of the receipt acknowledging satisfaction of all claims against the estate and the executor; that Shapiro was never authorized to represent her; and each of them denied having any conversation with him about a subordination agreement before the loan was closed. They also denied ever seeing the $3,000 note and the trust deed to Sam Charnes. The testimony of Kate Charnes is equivocal, and on repeated interrogatories she did not expressly deny the note and trust deed were made to secure the legacies. That her husband would hold, for more than six years,

a trust deed securing a note in the exact amount of the legacies, the note being made by her brothers who were liable for the payment of such legacies, without the knowledge of his wife, one of the legatees, seems highly improbable, and that he released the trust deed without her knowledge is equally outside the range of probabilities. In this connection, it is to be noted that when Hyman Arnove was being interrogated about this note and trust deed, he said: "The children came there and I signed it." The caption on the back of the trust deed, above the recording certificate, is in these words: "Deed of Trust Hyman Arnove, et al to Sam Charnes, As Trustee for use of holder."

Bessie Glazer testified her father had never talked to her about renewing the loan on the Main Street property, and that when she released her legacy on the Wildwood property her father brought the deed to her and when she saw her sisters had signed it she did whatever they did. Kate Charnes testified she released her legacy on the Wildwood Avenue property on the advice of her two brothers.

Under all this testimony and the circumstances above mentioned, we agree with appellant's contention that the trial court's exclusion of the $3,000 note and the trust deed to Sam Charnes was error. In our opinion the testimony tends to show that the whole family acted in concert concerning the several transactions in the estate of Ida Arnove, and strongly indicates that the note and trust deed were made solely as security for the payment of the legacies. It is obvious that Isadore and Joseph could not be included in "all three" that Hyman Arnove testified the note and trust deed were made to protect. They could not thus be protected against their own note, and as they had not yet conveyed their interest in the premises to their father, their interests therein could not have been subjected to any of his obligations, if he had any outstanding obligation, of which there is no evidence. It is

noticeable, too, that the receipts of appellees, acknowledging full satisfaction of their claim against the estate, were made after the $3,000 note and trust deed were executed. There is no credible testimony that even tends to show that the note and trust deed were made for any other purpose than to secure the payment of the legacies. Manifestly the purpose was known to Isadore and Joseph Arnove, the brothers of appellees, makers of the note and comakers of the trust deed, and to Sam Charnes the trustee and husband of one of appellees, yet appellees did not call any of them as a witness. The failure of a party to a suit to produce evidence available to him gives rise to a presumption against him, and in favor of the opposite party. (*Prudential Ins. Co. of America v. Bass,* 357 Ill. 72, 76; *Harper v. Owen H. Fay Livery Co.,* 264 Ill. 459, 464; *Belding v. Belding,* 358 Ill. 216, 220.)

Furthermore, the evidence shows that when the new loan was made, appellant intended that its lien should continue the same as under the old mortgage. There is no testimony which indicates that it intended to substitute the subordination agreement therefor, but the evidence shows the subordination agreement was demanded merely in an abundance of caution, to eliminate the possibility of just such litigation as this, the wisdom of which caution is demonstrated by the subsequent events. Taking the testimony of appellees as true, it is the settled law of this State that when a refunding mortgage is made, the lien of the old mortgage continues in effect without interruption and the new mortgage does not become subordinate to an intervening lien or interest attaching between the time of the recording of the old mortgage and the effective date of the new one, even though the old mortgage be released. This is because of the doctrine of conventional subrogation. (*Kaminskas v. Cepauskis,* 369 Ill. 566; *Roberts v. Doan,* 180 Ill. 187; *Shaver v. Williams,* 87 Ill. 469.) In the *Kaminskas* case, Cepauskis, the pur-

chaser of real estate, subject to the lien of a trust deed, applied to Kaminskas for a refunding loan about the time the old loan was due, and made a new trust deed to Kaminskas for the amount, in which Cepauskis was described as a bachelor. The old trust deed was released by the holder, and upon foreclosure of the new trust deed after the death of Cepauskis, his widow, who lived in Lithuania and was his wife when the new trust deed was executed, claimed dower in the premises. The Supreme Court held against her claim. It is said in the course of the opinion:

"The principal question before us is whether the doctrine of conventional subrogation is applicable as against the dower claim of appellant. This doctrine was defined by this court in *Home Savings Bank v. Bierstadt,* 168 Ill. 618, as that 'which results from an equitable right springing from an express agreement with the debtor, by which one advances money to pay a claim for the security of which there exists a lien, by which agreement he is to have an equal lien to that paid off, whereupon he is entitled to the benefit of the security which he has satisfied, with the expectation of receiving an equal lien.' The reason underlying the rule was stated as follows: 'This equitable principle is enforced solely for the accomplishment of substantial justice where one has an equity to invoke which cannot injure an innocent person.' This principle has been applied when money was advanced to pay off a prior mortgage and a judgment creditor claimed a lien superior to that of the new mortgagee who advanced the money." Citing *Tyrrell v. Ward,* 102 Ill. 29.

It was also contended in that case that Kaminskas knew at the time he loaned the money that Cepauskis was married. The court said they were convinced the evidence did not support that contention, and further said: "Moreover, we are of the opinion the question of knowledge is immaterial as far as the principle of

conventional subrogation is concerned. Because of the agreement equity simply assigns the security to him. *Wilkins v. Gibson,* 113 Ga. 31.'' Applying that principle to the case at bar, the fact that appellant knew of the lien of the legacies would not deprive its mortgage of priority. The situation in the case at bar is like that in the *Kaminskas* case in that the claim of appellees could attach in any event only to the equity of redemption in the mortgaged premises. It was held in the *Kaminskas* case that there can be no doubt that if the time had been extended on the old mortgage, the widow would have no claim to dower against the holders of the notes, and that there was no reason, in equity, why she should be in a better position because of the form of the transaction; but, that on the other hand, it would work a hardship and an injustice on the holder of the new notes to hold their lien was subordinate to the right of dower. Those expressions fit the situation in this case.

The payment of the delinquent taxes and special assessments and the mechanic's lien were manifestly necessary to preserve intact the priority of the old mortgage. The testimony shows there was no intention on the part of appellant to release or affect in any way its right to a prior lien, and it was only upon that condition and the agreement of Hyman Arnove to that effect that the new loan was made. In such case the law preserves the priority of the lien of the old mortgage. (*Kaminskas v. Cepauskis, supra; Roberts v. Doan, supra; Shaver v. Williams, supra.*)

Because of our conclusions in this respect it is unnecessary to discuss alleged procedural errors urged by appellant. That portion of the decree of the circuit court holding that the lien of the legacies is superior to the lien of appellant's mortgage is reversed and the cause is remanded with directions to enter a decree sustaining the priority of appellant's lien.

*Reversed in part and remanded.*