FIRST BANK OF ROSCOE, Plaintiff and Counterdefendant-Appellee, v. AL-FONSO A. RINALDI, Indiv. and as Trustee, Defendants and Counterdefendants-Appellees (Edwin J. Harper *et al.*, Defendants; Lawrence S. Lannon, d/b/a The Redco Group, Counterplaintiff-Appellant).

Second District   No. 2—93—0208

Opinion filed May 26, 1994.—Rehearing denied June 27, 1994.

Brittain, Sledz, Morris & Slovak, of Chicago (John B. Murnighan, of counsel), for appellant.

Brassfield, Cowan & Howard, of Rockford (Jeffrey E. Hardyman, of counsel), for appellee Alfonso A. Rinaldi.

JUSTICE COLWELL delivered the opinion of the court:

The counterplaintiff, Lawrence S. Lannon, d/b/a The Redco Group (Lannon), appeals from an order dismissing his counterclaim

and amended counterclaim against counterdefendants, Alfonso A. Rinaldi, sometimes known as Al Rinaldi (Rinaldi), and First Bank of Roscoe (Bank). Lannon had contracted with Rinaldi to develop a shopping center on a tract of real estate owned by Rinaldi. Rinaldi terminated the contract, and Lannon filed a claim for a mechanic's lien against Rinaldi. In a mortgage foreclosure action, subsequently dismissed by the Bank, Lannon sought recovery for his services as a "property manager."

The questions raised on the pleadings are whether the trial court erred (1) in finding that Lannon's services are not recognized as lienable under the Mechanics Lien Act (Act) (770 ILCS 60/1 *et seq.* (West 1992)), (2) in granting the Bank's motion to dismiss its complaint without prejudice, (3) in sustaining the motions of counterdefendants to strike parts of Lannon's counterclaim, and (4) in granting the motions to dismiss Lannon's alternative claim for equitable relief. We affirm.

An agreement between the Bank and Rinaldi was recorded on June 19, 1989, mortgaging 124 acres of undeveloped real estate in Roscoe, Illinois, for $1,018,000. A second mortgage was recorded on January 2, 1991, for $655,000. Meanwhile, on December 20, 1989, Rinaldi and Lannon entered into a written "Leasing and Development Agreement" (the Agreement), granting Lannon the exclusive right to develop a shopping center on the tract of land and to lease the retail space. On February 28, 1991, Rinaldi gave Lannon a written notice to terminate the Agreement. Lannon filed a claim for a mechanic's lien against Rinaldi on March 19, 1991, asserting he had performed services under the Agreement for which he had not been paid. Lannon alleged that he was owed $313,817.50 after crediting Rinaldi $68,225 for prior payments.

On April 2, 1992, the Bank initiated the instant cause with foreclosure proceedings against Rinaldi to which Lannon was joined as a defendant by virtue of his claim for a mechanic's lien. On May 21, 1992, Lannon filed a counterclaim in two counts: the first count was for foreclosure of his claimed lien against Rinaldi and the Bank, and the second count was in contract against Rinaldi. The Bank answered count I and Rinaldi moved to dismiss count I.

On August 21, 1992, the court granted Rinaldi's motion to dismiss and gave Lannon leave to file an amended counterclaim. Also, on August 21, the Bank dismissed its complaint to foreclose over Lannon's objection. In its order granting the dismissal without prejudice, the court stated that "[t]his order does not affect [Lannon's] counterclaim."

Lannon filed his amended counterclaim in four counts. Count I

was identical to his original counterclaim and was to foreclose his claimed mechanic's lien. Count II was identical to his original counterclaim and was in contract against Rinaldi. Count III was an expanded version of a complaint to foreclose a mechanic's lien. Count IV, in the alternative, sought to foreclose an equitable lien on the premises.

Rinaldi presented a motion to strike various allegations of the amended counterclaim and a motion to dismiss counts I, III, and IV. The Bank joined in Rinaldi's motions. The court considered the pleading and motions and the Bank's oral representation that it would present a motion to withdraw its answer to Lannon's original count I and move to dismiss it.

After the court's ruling on the motions to strike and dismiss, Lannon elected to stand on his amended counterclaim. He orally moved to dismiss without prejudice his original count I as to the Bank and count II sounding in contract.

The court agreed with Rinaldi and the Bank that Lannon's services are not recognized as lienable under the Mechanics Lien Act. Count I of the original counterclaim pending against the Bank, which was to foreclose Lannon's claimed mechanic's lien, was ordered dismissed without prejudice. Count I of the amended counterclaim pending against Rinaldi, which also was for foreclosure of the claimed mechanic's lien, was ordered dismissed with prejudice. Count II of the original and of the amended counterclaim, which were identical and sounded in contract against Rinaldi, was ordered dismissed without prejudice.

Pursuant to Rinaldi's and the Bank's motions, the court struck as self-serving and conclusory certain allegations of the amended counterclaim. The motion to dismiss count III of the amended counterclaim, which was the expanded version of a complaint to foreclose a mechanic's lien, was granted, as was the motion to dismiss count IV of the amended counterclaim. Both counts were ordered dismissed with prejudice. Lannon's timely appeal followed.

It is axiomatic that when the legal sufficiency of all or part of a complaint (or counterclaim) is challenged by a section 2—615 motion to dismiss (735 ILCS 5/2—615 (West 1992)), all well-pleaded facts in the challenged section are to be taken as true, and a reviewing court must determine whether the allegations of the complaint, when interpreted in the light most favorable to the plaintiff (or counter-plaintiff), are sufficient to set forth a cause of action upon which relief may be granted. (*DiBenedetto v. Flora Township* (1992), 153 Ill. 2d 66, 70.) A cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved that will

entitle the plaintiff to recover. (*People ex rel. Daley v. Datacom Systems Corp.* (1991), 146 Ill. 2d 1, 11.) To avoid dismissal for the failure to state a cause of action, a complaint must set out sufficiently every essential fact to be proved; conclusions of law or fact unsupported by specific factual allegations are not taken as true. *Benhart v. Rockford Park District* (1991), 218 Ill. App. 3d 554, 556-57; *Groenings v. City of St. Charles* (1991), 215 Ill. App. 3d 295, 299.

■ Lannon first contends that the trial court erred in finding that his services are not recognized as lienable under the Mechanics Lien Act. The basis for filing a lien under the Act is the performance of work or the furnishing of materials that constitute an improvement to the land. (*Cleveland Wrecking Co. v. Central National Bank* (1991), 216 Ill. App. 3d 279, 285.) Section 1 of the Act specifies the situations in which a lien may be filed:

> "Any person who shall by any contract or contracts, express or implied, *** with the owner of a lot or tract of land, *** to improve the lot or tract of land or to manage a structure thereon, *** or perform any services or incur any expense as an architect, structural engineer, professional engineer, land surveyor or property manager in, for or on a lot or tract of land for any such purpose *** is known under this Act as a contractor, and has a lien upon the whole of such lot or tract of land *** for the amount due to him for such *** services or labor, and interest at the rate of 10% per annum from the date the same is due." (770 ILCS 60/1 (West 1992).)

To determine the validity of a claim under the Act, the focus of the inquiry is whether the work performed has enhanced the value of the land. *Cleveland Wrecking*, 216 Ill. App. 3d at 285; *Watson v. Watson* (1991), 218 Ill. App. 3d 397, 400.

No allegations are raised in the pleadings regarding Lannon's leasing duties. The Agreement, a copy of which is attached to the counterclaim, describes Lannon's duties with respect to development:

> "A. Prepare a written discription [*sic*] of the overall development concept for the property.
>
> B. Develop a preliminary site plan for the property indicating the various land uses by size and location. This plan will be drawn by the owner's architect or land planner, and will be the basis for Village approvals.
>
> C. Prepare a preliminary timetable for the development of the property.
>
> D. Orchestrate the various municipal approvals required to develop the property, including annexation, zoning, and permits. These functions will be done in conjuction [*sic*] with the architect,

engineer, land planner, and attorney, all of whom will represent the owner.

E. Coordinate with the other professionals retained by the owner all of the necessary engineering requirements and governmental approvals outside of Village jurisdiction, including the Illinois Department of Transportation.

F. Prepare a preliminary proforma budget for the development of the various components of the property by land use.

G. Prepare a written description or summary of the proposed anchor tenant leases or land sales for the proposed shopping center.

H. Coordinate and direct preliminary and final architectural and landscaping concepts and designs.

I. Prepare a written summary of proposed construction and permanent financing for the various components of the property as they are developed, and coordinate the financing with the selected mortgage banker, or financier.

J. Supervise the architect, engineer, general contractor, and all other professionals associated with the construction of various components of the property.

K. Monitor all development activities through completion, and advise owner on a periodic basis of recommended strategies and courses of action."

Under the Act, architects, structural engineers, professional engineers, land surveyors, and property managers who perform any service or incur any expense for any purpose are entitled to a lien. (770 ILCS 60/1 (West 1992).) Lannon maintains that his contractual duties fall within the purview of a property manager's services and that their performance, allegedly begun when the Agreement was terminated, has enhanced the value of the property. Therefore, Lannon argues, he is entitled to a lien.

Whether one who has contracted to develop a shopping center on vacant and unimproved real estate is entitled to a mechanic's lien for the performance of his duties has not been previously decided in Illinois. We examine first the scope of the term "property manager" in section 1 of the Act.

The primary rule of statutory construction is to determine and give effect to the intent of the legislature, and the language of the statute itself gives the best indication of that intent. (*Burke v. 12 Rothschild's Liquor Mart, Inc.* (1992), 148 Ill. 2d 429, 441-42.) Statutory language should be accorded its plain or ordinary and popularly understood meaning. (*Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund* (1993), 155 Ill. 2d 103, 111.) Statutory intent that can be ascertained by the language must be

given effect without resorting to other methods of construction. (*La-Grange State Bank v. Village of Glen Ellyn* (1992), 227 Ill. App. 3d 308, 314.) However, if the language is capable of being understood by reasonably well-informed persons in two or more different senses, an ambiguity exists, and it is proper to examine sources other than the statute's language to ascertain the legislative intent. (*Williams v. Illinois State Scholarship Comm'n* (1990), 139 Ill. 2d 24, 51; *Hyatt Corp. v. Sweet* (1992), 230 Ill. App. 3d 423, 429.) Published legislative history is an appropriate source to determine the legislature's intent when an ambiguity exists. *People v. Kezerian* (1978), 63 Ill. App. 3d 610, 614.

Public Act 84—702 inserted the following three phrases into section 1 of the Act: "to manage a structure thereon," "or incur any expense," and "or property manager." (Pub. Act 84—702, eff. September 20, 1985.) The parties primarily dispute whether these amendments, which occur in different parts of the section's protracted opening sentence, are interrelated.

Rinaldi maintains that the legislature intended "property manager" to be synonymous with one who manages a structure on the land of an owner. Having extended the protection of the Act to a person who manages a structure on land, the legislature then listed "property manager" among those persons who have liens as a result of performing services or incurring expenses. While a distinction is established at the beginning of the section between those who contract with the owner to improve the land and those who contract to manage a structure on the land, both are entitled to liens for services performed or expenses incurred. In this view, a property manager is effectively defined in section 1 as a person who contracts with an owner of land "to manage a structure thereon" (770 ILCS 60/1 (West 1992)).

Lannon argues that this interpretation must fail, because the term "property manager" occurs in a listing of such professionals as architects, engineers, and land surveyors, all of whom clearly contract to improve the land. The lienability of these professionals' services and expenses is not limited to land on which a structure is located; therefore, the lienability of a property manager's services and expenses should not be so restricted. As previously stated, Lannon asserts that his contractual duties "to develop" a shopping center bring him within the ambit of a "property manager."

We note initially a distinction in the plain or ordinary meanings of the transitive verbs "to develop" and "to manage." As popularly understood, to "develop" is "to make visible or manifest" (Webster's Third New International Dictionary 618 (1986)), while to "manage"

is "to direct" or to "supervise" (Webster's Third New International Dictionary 1372 (1986)). The distinction becomes clear when "to manage" is substituted for "to develop" in the Agreement between Lannon and Rinaldi: "to manage a shopping center" is not the same as "to develop a shopping center."

Additionally, we find it significant that the legislature does not mention developers, or persons who contract to develop, among those protected by the Act. When a statute lists the things to which it refers, there is an inference that all omissions should be understood as exclusions, despite the lack of any negative words of limitation. (*Burke v. 12 Rothschild's Liquor Mart, Inc.*, 148 Ill. 2d at 442; *Illinois Bell Telephone Co. v. Illinois Commerce Comm'n* (1990), 203 Ill. App. 3d 424, 438.) In 1913, the legislature extended the lien to cover forms used in cement work (1913 Ill. Laws 400, eff. July 1, 1913); in 1937, the lien was extended to the well driller (1937 Ill. Laws 904, eff. July 1, 1937); the 1951 amendment allowed the lien for the performance of services as a professional engineer or land surveyor (1951 Ill. Laws 1358, approved July 11, 1951); in 1980 the lien was extended to cover certain demolition work (Pub. Act 81—1185, eff. July 1, 1980); and the 1985 amendment extended the lien to the property manager (Pub. Act 84—702, eff. September 20, 1985). Since no amendment extends the lien to the developer, or to the person who contracts to develop, we conclude that the legislature intends to exclude those individuals from the coverage of the Act.

Nevertheless, Lannon argues that if the legislature intended to define a property manager as a person who only manages a structure, it would have used the designation "property manager of a structure" in place of "property manager." We acknowledge that an ambiguity may be raised by the drafters' omission of the qualifying language. (See, *e.g.*, *Contract Development Corp. v. Beck* (1994), 255 Ill. App. 3d 660, 669 (where this court suggested in *dicta* that a construction manager who had performed preliminary services might be entitled to a lien as a "property manager" under the Act).) Accordingly, we have consulted the published legislative history to determine the legislature's intent. See *Kezerian*, 63 Ill. App. 3d at 614.

A review of the legislative history of Public Act 84—702 (Senate Bill 824) indicates the legislature's intent to equate a property manager with a person who manages structures or buildings. (See, *e.g.*, 84th Ill. Gen. Assem., Senate Proceedings, May 15, 1985, at 222-23; 84th Ill. Gen. Assem., House Proceedings, June 24, 1985, at 102-08.) It further appears that the amendments were inserted specifically to provide a remedy for property managers such as realtors. See 84th Ill. Gen. Assem., House Proceedings, June 24, 1985, at 102-08.

We note an interrelationship among the three phrases added to section 1 by Public Act 84—705. When combined, the amendments serve to effectuate the purpose apparent in the legislative history: "property manager" denotes a class of persons entitled to a lien under the Act; "to manage a structure thereon" designates the service performed by a property manager; and "or to incur any expense" provides a basis for a property manager's lien.

Still, Lannon maintains that the Act should be liberally construed, and that the contractual duties he had allegedly initiated when the Agreement was terminated entitle him to a lien because they are the types of services contemplated by a liberal interpretation of the Act.

■ The Mechanics Lien Act is a creation of statute in derogation of the common law that provides extraordinary remedies to certain classes of contractors and subcontractors; as such, its technical and procedural requirements must be strictly construed. (*Prior v. First Bank & Trust Co.* (1992), 231 Ill. App. 3d 331, 333.) The lien is valid only if each of the statutory requirements is scrupulously observed. (*Watson v. Watson* (1991), 218 Ill. App. 3d 397, 399-400.) Once the lien claimant has complied with the statutory requirements, the Act should be liberally construed to carry out its remedial purpose of allowing recovery based on a lien where the value of the property has been increased by furnishing labor or materials. *Delaney Electric Co. v. Schiessle* (1992), 235 Ill. App. 3d 258, 265.

We believe Lannon's contractual position does not bring him within a class of contractor or subcontractor to which the extraordinary remedies of the Act extend. The cases cited by Lannon for the proposition that the Act should be construed liberally all involve classes of claimants to which the Act's coverage has been expressly extended. See, *e.g.*, *Plepel v. Nied* (1982), 106 Ill. App. 3d 282 (lien allowed for an architect's preliminary services); *Freeman v. Rinaker* (1900), 185 Ill. 172 (reasoning in *dicta* that architects are entitled to a lien without an improvement on the property because the language of the Act specifically includes architects as a class of persons who may enforce a lien for services rendered); see also *Cleveland Wrecking Co. v. Central National Bank* (1991), 216 Ill. App. 3d 279 (lien allowed for the removal of debris following demolition); *Du Page Bank & Trust Co. v. Du Page Bank & Trust Co.* (1984), 122 Ill. App. 3d 1015 (a building contractor's lien for additional work done and unpaid for under the construction contract with the owner given priority over the lender's trust deed); *Hollembeak v. National Starch & Chemical Corp.* (1981), 95 Ill. App. 3d 309 (lien allowed for demurrage assessed by a supplier of ready-mix concrete); *Verplank Concrete & Supply,*

*Inc. v. Marsh* (1976), 40 Ill. App. 3d 742 (truck rental for ready-mix concrete held lienable).

As stated above, the lien has not been extended to the person who contracts to develop or who performs the services of a developer. Therefore, we conclude that the trial court did not err in finding that Lannon's services are not recognized as lienable under the Mechanics Lien Act.

■ Lannon next contends that the trial court erred in granting the Bank's motion to dismiss its complaint without prejudice. Lannon cites section 2—1009 of the Code of Civil Procedure (735 ILCS 5/2—1009 (West 1992)): "[a]fter a counterclaim has been pleaded by a defendant no dismissal may be had as to the defendant except by the defendant's consent."

The purpose of section 2—1009 is "to prevent a voluntary dismissal where without his consent such dismissal would be unfair or unjust to a defendant." (*Clyde Savings & Loan Association v. May Department Stores* (1981), 100 Ill. App. 3d 189, 194.) In its order granting the dismissal without prejudice, the trial court expressly stated that "[t]his order does not affect [Lannon's] counterclaim." The trial court then heard and considered Lannon's amended counterclaim before granting the counterdefendants' motions to dismiss. We conclude that the voluntary dismissal in this instance was not unfair or unjust to Lannon and, therefore, find that the trial court did not err.

■ Lannon next asserts that the trial court erred in sustaining the motions of the counterdefendants to strike parts of his counterclaim. Lannon objects to the trial court's ordering stricken as self-serving and conclusory the following passages:

"On or about October 15, 1989, Rinaldi and Lannon orally contracted for managing the development of the property called the Prairie Business Center and thereafter a written Agreement memorializing the terms thereof was entered into on December 20, 1989.

* * *

On or about October 15, 1989, Rinaldi and Lannon orally contracted to improve the [*sic*] said tract of land by developing it as the Prairie Business Center. Rinaldi made Lannon the property manager for that purpose. * * *

Lannon commenced the performance of his duties as property manager * * *."

Each of these allegations contains references implying that Lannon was a property manager. As stated above, conclusions of law or fact unsupported by specific factual allegations are not taken as true.

*Benhart v. Rockford Park District*, 218 Ill. App. 3d at 556-57; *Groenings v. City of St. Charles*, 215 Ill. App. 3d at 299.

Under "Services of Agent," the Agreement attached to Lannon's counterclaim states "[t]he work and services to be undertaken and provided by the Agent under this Agreement are to provide the services necessary, other than professional services (attorney, accounting, engineering, surveying, etc.) to develop a shopping center." Nowhere in the Agreement do the terms "manage" or "manager" occur; a single reference to "Managing Agent" occurs under the description of Lannon's leasing duties: "[c]omply with such policies as the Owner or Managing Agent may establish with regard to leasing of the Project."

It is evident that Lannon contracted to develop a shopping center, not to manage property. Moreover, whether the alleged performance of his contractual duties brought him under the Act as a "property manager" was a question of law presented to the trial court. Thus, the references in his counterclaim implying that he was a property manager are both unsupported and conclusory.

We further note that the Agreement contains a clause providing that it "embodies the full understanding of the parties with respect to the subject matter hereof and that it supersedes any prior agreements, written or oral, which may ever have existed between them with respect to the agency created herein." Thus, any references to prior oral agreements were also properly stricken.

■ The final issue Lannon raises is whether the trial court erred in granting the motions to dismiss his alternative claim for an equitable lien. Lannon asserts that if his mechanic's lien claim fails, considerations of equity and justice should move this court to award an equitable lien against Rinaldi's land for the services he has allegedly performed.

An equitable lien is the right to have property subjected to the payment of a claim. (*Calacurcio v. Levson* (1966), 68 Ill. App. 2d 260, 263.) The essential elements of an equitable lien are a debt, duty, or obligation owing by one person to another and a *res* to which that obligation fastens. *Hargrove v. Gerill Corp.* (1984), 124 Ill. App. 3d 924, 931.

Equitable liens have been imposed where contracts manifested the intent that particular property or funds be security for debts wherever there has been a promise to convey or assign the property as security. (*Upton National Bank v. Stramer* (1991), 218 Ill. App. 3d 905, 908-09.) But if a contract expressly covers the entire subject matter and does not provide for a lien, a lien will not be inferred. *Pruitt Office Machines, Inc. v. Liberty National Bank* (1950), 341 Ill. App. 146, 149.

As previously noted, the Agreement between Lannon and Rinaldi contains a clause stating that the written contract embodies the entire understanding of the parties with respect to its subject matter. The Agreement contains no provision that makes the property stand as security for the fulfillment of Rinaldi's obligations.

Although equitable liens may be imposed in the absence of an express agreement out of considerations of fairness (*Hargrove*, 124 Ill. App. 3d at 931), there must be some ground for the intervention of equity, such as the absence of an adequate remedy at law. (*Pruitt Office Machines*, 341 Ill. App. at 149.) The tendency is to limit rather than extend the doctrine of equitable liens. *Canton v. Chorbajian* (1980), 88 Ill. App. 3d 1015, 1023; *Pruitt Office Machines*, 341 Ill. App. at 149.

Count II of Lannon's amended counterclaim sounded in contract against Rinaldi and was dismissed without prejudice. We believe Lannon has not alleged an adequate ground for the intervention of equity when he has available the legal remedy of a breach of contract action. Therefore, we find no error in the dismissal of his alternative claim.

For the above reasons, we affirm the order of the circuit court of Winnebago County.

Affirmed.

QUETSCH and PECCARELLI, JJ., concur.