SECOND DIVISION

September 12, 2000 

Nos. 1-98-1388 & 1-98-3292 (Cons.) 

LASALLE BANK, N.I., f/k/a LASALLE ) Appeal from the

BANK NORTHBROOK, ) Circuit Court of

) Cook County.

Plaintiff-Appellee, ) 

)

v. ) 

) 

FIRST AMERICAN BANK, as trustee under ) 

trust No. F89-130, 
et al.
, ) 

) 

Defendants. ) 

------------------------------------- ) 

)

DANIEL LOPEZ, )

)

Counter-plaintiff-Appellant, )

)

)

)

BRANDESS HOME BUILDERS, INC., FIRST )

AMERICAN BANK as trustee under trust )

No. F89-130, LASALLE BANK-NORTHBROOK, )

UNKNOWN OWNERS and NON-RECORD CLAIMANTS,) The Honorable

) Dorothy Kirie Kinnaird,

Counter-defendants. ) Judge Presiding.

JUSTICE McBRIDE delivered the opinion of the court:

This mortgage foreclosure action was initiated by appellee 
LaSalle Bank, N.I. (LaSalle), formerly known as LaSalle Bank Northbrook, which had a mortgage lien on property commonly known as 828 Pony Lane, in Northbrook, Illinois (the subject premises).  Appellant Daniel Lopez, who had signed a purchase contract on the subject premises and had advanced a sum of money to the now bankrupt legal owner, filed an answer and counterclaim.  LaSalle and Lopez disagreed as to the priority of their respective liens on the subject premises.  Lopez moved for summary judgment.  His motion was denied and LaSalle then moved for summary judgment.  The court granted summary judgment for LaSalle, finding that LaSalle's mortgage lien had priority over any vendee's lien Lopez might have in the subject premises.  Lopez filed separate appeals from the judgment of foreclosure and sale entered by the trial court on March 23, 1998, and from the court's July 31, 1998, order approving the report of sale and distribution, confirming sale and order for possession.  The two separate appeals have been consolidated before this court.

The facts are not in dispute.  The disagreement in this case centers on the priority of claimed liens related to the subject premises
.  Legal title to the subject premises was held by First American Bank (First American), as trustee of a land trust in which the subject premises were held
.  The sole beneficiary of the land trust was Brandess Home Builders (Brandess), a custom home builder.  In 1990, Parkway Bank and Trust Company (Parkway) obtained an interest in the subject premises through recorded mortgages (the Parkway mortgage).

Lopez entered into a written purchase contract with Brandess on May 9, 1995 (the purchase contract).  Under the purchase contract, Brandess agreed to convey the subject premises, improved with a custom home, to Lopez in return for the sum of $519,042.  Lopez subsequently paid Brandess $120,933 in earnest money and partial payment.  Lopez, to satisfy a contract contingency, also obtained and delivered to Brandess a mortgage end loan commitment from Sunbelt National Mortgage.

Upon receipt of the above, Brandess applied to LaSalle for a construction loan to finance construction of a custom home on the subject premises.  A LaSalle loan committee approved a secured construction loan of up to $385,000 on August 21, 1995.  The request for loan approval prepared by a LaSalle loan officer noted that the property had been sold to Lopez for $519,042.  At the time it made the loan, LaSalle had copies of the Brandess/Lopez purchase contract, Lopez' end-loan commitment, and was aware that Lopez had deposited earnest money with Brandess.

On August 21, 1995, First American, as borrower, executed a promissory note to LaSalle in the original principal sum of $385,000.  The note was secured with the conveyance of a construction mortgage on the subject premises
 between First American as grantor and LaSalle as lender
.  The mortgage was recorded by LaSalle on August 24, 1995.

The construction loan agreement between LaSalle and Brandess provided, under a section entitled "Conditions Precedent to Each Advance," in pertinent part:

"TITLE INSURANCE - Borrower shall have provided to Lender an ALTA Lender's Extended Coverage Policy of Title Insurance with such endorsement as Lender may require, issued by a title insurance company acceptable to Lender and in a form, amount, and content satisfactory to Lender insuring or agreeing to insure that Lender's Mortgage or Deed of Trust on the Property is or will be upon recordation a 
valid first lien on the property
 free and clear of all defects, liens, encumbrances, and exceptions, except those as specifically accepted by Lender in writing."  (Emphasis added).

The mortgage, in a section entitled "Further Assurances; Attorney-

In-Fact," provided, in pertinent part:

"Further Assurances - At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or re-

recorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve *** (b) the liens and security interest created by this Mortgage 
as first and prior liens on the Property
, whether now owned or hereafter acquired by Grantor." (Emphasis added).

LaSalle approved an initial disbursement to Brandess in the amount of $199,400, which was deposited in an escrow account at Chicago Title & Trust.  $150,000 of that amount was used to pay off the Parkway mortgage.  Upon receiving the $150,000, Parkway released its mortgage in the subject premises.  A total of $203,565 was eventually advanced by LaSalle to Brandess.

Brandess stopped construction on the home when it was approximately 50% complete.  Brandess filed for bankruptcy on November 1, 1996, and was subsequently adjudicated bankrupt.

The LaSalle mortgage loan was in default and, on May 14, 1996, LaSalle filed suit to foreclose on the mortgage.  Lopez answered the complaint and filed a counterclaim seeking specific performance of the purchase contract between himself and Brandess and requested that the court find his vendee's lien prior, superior, and paramount to LaSalle's mortgage lien.  Several subcontractors and tradesman also asserted mechanic's lien claims against the subject premises.

Lopez moved for summary judgment on his amended counterclaim, arguing that the doctrine of equitable conversion gave him an interest in the subject premises that was superior to LaSalle's interest.  The trial court, in denying Lopez' motion for summary judgment, found that the equitable doctrine of conventional subrogation applied.  The court found that pursuant to the construction loan agreement, there was an agreement between Brandess and LaSalle that LaSalle's mortgage was to have priority over all other lien claimants.  The trial court, in applying the doctrine of conventional subrogation, determined that under 
FirstMark Standard Life Insurance Co. v. Superior Bank FSB
, 271 Ill. App. 3d 435, 649 N.E.2d 465 (1995),
 LaSalle stood in the position of Parkway for purposes of lien priority because of the payoff of the Parkway mortgage and the language of the construction loan agreement with Brandess.

On September 18, 1997, LaSalle filed its own motion for summary judgment on its amended complaint.  The court, relying on the same reasoning it had used in denying Lopez' motion, granted LaSalle's motion.  In so doing, the court found that as a matter of law, LaSalle's mortgage, to the extent it paid off the Parkway mortgage, was prior, paramount, and superior to any lien Lopez may have had.

Over the objections of Lopez, the court entered a judgment of foreclosure and sale on March 23, 1998.  The judgment awarded LaSalle a lien prior to that of Lopez in the amount of $220,669.27.  That amount included not only the $150,000 related to the Parkway mortgage but also interest, late charges, attorney fees, and costs.  
The judgment also settled the claims of six mechanic's lien claimants for a total payment of $49,295 provided LaSalle were the successful bidder at the judicial sale.  If, however, LaSalle were not the successful bidder, the claims of all mechanic's lien claimants would remain in full force and effect against the subject premises.  The judgment left unresolved, no matter who the successful bidder was, the claim of one other mechanic's lien claimant.

The court's order did not adjudicate Lopez' claim for specific performance.  The court noted that it had before it only a motion for summary judgment on the judgment of foreclosure and that there was no formal motion pending on the specific performance count in Lopez' counterclaim.  The court orally ruled that Lopez' request that the court order Brandess to sign a deed, adjudicate the value of improvements on the subject premises, and order Lopez to pay the value of the lot and improvements was not a complaint for specific performance, but was "more in the nature of a passioned remedy."  The court, in declining to adjudicate the issue, also found that because Lopez had not presented the bankruptcy court order modifying the automatic stay, it was unable to determine whether the court had jurisdiction to decide the claim.
(footnote: 1)
The trial court also stated that it was deferring prioritization of any lien Lopez might have in relation to the remaining principal amount of the LaSalle mortgage and the mechanic's lien claims.  Lopez objected, asking that the court prioritize his lien prior to the judicial sale.

A judicial sale of the subject premises then took place.  LaSalle, who bid $50,000, was the successful bidder.  On July 31, 1998, the trial court entered an order confirming the sale and distribution.  In a separate order, the court overruled Lopez' objections to the court's approval of the sale.

Lopez now appeals.

A trial court's rulings on motions for summary judgment are reviewed 
de
 
novo
 on appeal. 
 
W.C. Richards Co., Inc. v. Hartford Accident & Indemnity Co.
, 311 Ill. App. 3d 218, 220, 724 N.E.2d 63 (1999).

As noted above, the parties disagree as to the priority of the respective liens they claim on the subject premises.  
On appeal, the parties, as in their motions for summary judgment, each rely upon a different equitable doctrine.

Lopez contends that through the doctrine of equitable conversion, he obtained an interest in the subject premises which was prior in time, and therefore superior, to LaSalle's interest.  Lopez argues that the trial court thus erred in granting summary judgment to LaSalle.  LaSalle argues that, for various reasons, the doctrine of equitable conversion is inapplicable.

LaSalle, in turn, contends that where part of the proceeds of its mortgage loan was used to discharge a prior land loan and the loan documents expressly indicated LaSalle was to have a first and prior mortgage lien, the equitable doctrine of conventional subrogation applied and LaSalle's mortgage gained priority over any interest Lopez had in the subject premises.  Lopez disagrees, arguing that the trial court's reliance on conventional subrogation was inappropriate.

Because the trial court relied on the doctrine of conventional subrogation in finding that LaSalle's lien had priority and in granting summary judgment for LaSalle, we will address the parties' arguments regarding that doctrine first.

In 
Home Savings Bank v. Bierstadt
, 168 Ill. 618, 624, 48 N.E. 161 (1897), conventional subrogation was defined as that:

"which results from an equitable right springing from an express agreement with the debtor, by which one advances money to pay a claim for the security of which there exists a lien, and by such agreement he is to have an equal lien to that paid off.  Then he is entitled to the benefit of the security which he has satisfied, with the expectation of receiving an equal lien."

More specifically, in terms of real property, the doctrine of conventional subrogation holds that when a refunding mortgage is made, the lien of the old mortgage continues in effect without interruption and the refunding mortgage does not become subordinate to an intervening lien or interest attaching between the time the old mortgage was recorded and the effective date of the refunding mortgage, even though the old mortgage has been released.  
Kankakee Federal Savings & Loan Ass'n v. Arnove
, 318 Ill. App. 261, 268, 47 N.E.2d 874 (1943).  The doctrine was also succinctly summed up in 
Western United Dairy Co. v. Continental Mortgage Co.
, 28 Ill. App. 2d 132, 135, 170 N.E.2d 650 (1960), where the court stated:

"Conventional subrogation gives a third party, who loans a landowner money with which to discharge a prior lien, with the express (though not necessarily written) agreement that the third party will then be in the position of the prior lienor, priority over intervening lienors to the extent of the discharged lien.  It differs from 'legal' subrogation in that the third party would be a 'volunteer', with no obligation to discharge the prior lien or interest in the encumbered property, except for the agreement."

See also 
Firstmark Standard
, 271 Ill. App. 3d at 439-41 (discussing the above cases and others, and holding that the "linchpin" of the conventional subrogation cases is an "express agreement that the interests of a subsequent mortgagor are to be advanced to a first mortgage").

There is no dispute that a portion of the LaSalle loan proceeds were used to discharge the Parkway mortgage.  The parties also agree that the Parkway mortgage had priority over any subsequent lien acquired by Lopez.
  We agree with LaSalle that the construction loan agreement and LaSalle mortgage
 both contained language expressing an intent to give LaSalle a first and prior mortgage
 on the subject premises.  We thus find that the trial court properly applied the doctrine of conventional subrogation in finding that LaSalle was subrogated to the position of Parkway and therefore had a first and priority lien to the extent of Parkway's $150,000 lien.

The LaSalle mortgage and construction loan agreement were between itself as lender, and borrowers First American and Brandess as, respectively, trustee and legal owner of the property, and beneficial owner.  Contrary to the assertions of Lopez, the doctrine of conventional subrogation does not require either that LaSalle obtain Lopez' consent to subordinate Lopez' purported lien, or that LaSalle obtain an assignment of the Parkway mortgage.   See 
Tyrrell v. Ward
, 102 Ill. 29, 36-37 (1881) (where loan was advanced for the purpose of discharging prior liens and to thus create a prior lien in relation to others in favor of lending party, "equity must treat the transaction as an assignment to [the lender], as fully so as had a formal assignment been made and endorsed on the papers evidencing these debts and liens").  Similarly, LaSalle's knowledge of Lopez' purchase contract with Brandess is immaterial to the application of the doctrine of conventional subrogation.  See 
Kaminskas v. Cepauskis
, 369 Ill. 566, 571, 17 N.E.2d 558 (1938).

Lopez maintains that a lien that is first in time is first in right, and that his lien was therefore superior to LaSalle's mortgage because it was created first.  Lopez also contends that because a subrogee stands in the shoes of his subrogor, LaSalle's interest in the subject premises was terminated when Parkway recorded its release.  
In 
Arnove
, 318 Ill. App. at 268, it was held that when the doctrine of conventional subrogation is applied, "the lien of the old mortgage continues in effect without interruption and the new mortgage does not become subordinate to an intervening lien or interest attaching between the time of the recording of the old mortgage and the effective date of the new one, even though the old mortgage be released."  The Parkway mortgage, despite being released, is deemed to have continued uninterrupted through the doctrine of conventional subrogation and thus preceded Lopez' purported lien in time.  
Therefore it is the Parkway mortgage that was "first in time" and LaSalle, as subrogee to the mortgage, that is "first in right."

Lopez suggests that the trial court wrongly applied the doctrine of conventional subrogation to his prejudice as an "innocent third party."  
It is true that equity will effectuate the real intention of the parties through the principal of conventional subrogation only where no injury is done to an innocent party.  
Bierstadt
, 168 Ill. at 625.  Lopez, however, is not an innocent party harmed by application of the doctrine of conventional subrogation.  Lopez gave his earnest money payment to Brandess knowing that Parkway had a superior mortgage lien.  The application of the doctrine of conventional subrogation giving LaSalle's mortgage a priority position leaves Lopez in the same position that he was in when he first contracted to purchase the subject premises.  In such a case, the doctrine may be applied.  See 
Bierstadt
, 168 Ill. at 625 (conventional subrogation may be applied "as against a subsequent incumbrancer, whose incumbrance has not been taken or his position changed because of the record showing the discharge of the senior incumbrance").

Having determined that the trial court properly applied the doctrine of conventional subrogation in finding that LaSalle was subrogated to the position of Parkway, we turn now to the parties disagreement over application of the doctrine of equitable conversion to create a vendee's lien in favor of Lopez.

The trial court did not make an actual finding that Lopez had acquired a valid vendee's lien through equitable conversion.  On appeal, Lopez, citing Section 15-1506(h) of the Mortgage Foreclosure Law (735 ILCS 5/15-1506(h) (West 1996)), and 
NBD Highland Park Bank, N.A. v. Wien
, 251 Ill. App. 3d 512, 622 N.E.2d 123 (1993), contends that the court should have determined the validity and priority of his lien where Lopez did not defer or waive his right to have such determinations made.  We agree that the trial court, pursuant to section 15-1506(h) and the 
Wien
 decision,
 should have determined the validity and priority of Lopez' lien.  Our own review of the facts however, leads us to conclude that a lien on the subject premises in favor of Lopez did not arise.

Under the doctrine of equitable conversion, at the time an owner of land enters into a valid and enforceable purchase contract concerning the property, he continues to hold legal title to the property in trust for the buyer, while the buyer becomes the equitable owner of the property and holds the purchase money in trust for the seller.  
Shay v. Penrose
, 25 Ill. 2d 447, 449, 185 N.E.2d 218 (1962); 
Life Savings & Loan Ass'n of America v. Bryant
, 125 Ill. App. 3d 1012, 1016, 467 N.E.2d 277 (1984) (quoting 
Shay
).

According to LaSalle, Lopez' contract with Brandess, the beneficiary of the land trust in which the subject premises was held, could not give rise to a lien on the real property.
  In an Illinois land trust, both legal and equitable title to real property rest in the trustee, while the interest of the beneficiary of the trust is personal property.  
Parkway Bank & Trust Co. v. Northern Trust Co.
, 213 Ill. App. 3d 444, 448-49, 572 N.E.2d 1055 (1991).  
First National Bank of Barrington, Trust No. 11-1317 v. Oldenburg
, 101 Ill. App. 3d 283, 286-87, 427 N.E.2d 1312 (1981).  Thus, the trustee is the absolute owner of the real estate.  
Oldenburg
, 101 Ill. App. 3d at 287.

It has been held that a land trust beneficiary may, under certain circumstances, contract to sell real property.  See 
Madigan v. Buehr
, 125 Ill. App. 2d 8, 16-17, 260 N.E.2d 431 (1970).  It has also been established that a beneficiary may even, under certain circumstances, encumber the trust property with a lien.  See
 
Paine/Wetzel Associates, Inc. v. Gitles
, 174 Ill. App. 3d 389, 393-

94, 528 N.E.2d 358 (1988).  In the instant case, however, Brandess was at no time the legal or equitable owner of the subject premises.
  Lopez has failed to direct us to, and we have not found, any case in which the doctrine of equitable conversion was applied where the vendor at no time had title to the property.  The doctrine of equitable conversion has traditionally been applied where there was a contract between an owner and a purchaser.  Thus, Lopez, in essence, asks us to expand the doctrine to include holders of a beneficial interest in a land trust.  This we decline to do.
 
 We conclude that Lopez is not entitled to application of the doctrine of equitable conversion here because he contracted with Brandess, who was not at any time the legal or equitable owner of the property and thus had no ownership interest to convey.

The cases relied upon by Lopez, 
Life Savings & Loan Association of America v. Bryant
, 125 Ill. App. 3d 1012, 467 N.E.2d 277 (1984), and 
Hinsdale Federal Savings & Loan Ass'n v. Gary-

Wheaton Bank
, 100 Ill. App. 3d 746, 427 N.E.2d 963 (1981), are distinguishable.  In 
Hinsdale
, the property at issue was not held in trust and the purchase contract through which the vendees were found to have become the equitable owners of the property was between the vendees and vendor/owner of the property.  In 
Bryant
, 125 Ill. App. 3d at 1017, the vendor, a business, did not have title to the property at the time it entered into a sales contract regarding the property.  The vendor subsequently acquired title, however, at which time the court held the vendee's equitable interest in the property attached.  As noted above, in the instant case Brandess was at no time the legal or equitable owner of the subject premises.

Moreover, the language of the purchase contract between Brandess and Lopez precludes a finding that an equitable lien should be imposed here.  "Equitable liens have been imposed where contracts manifested the intent that particular property or funds be security for debts wherever there has been a promise to convey or assign the property as security."  
Uptown National Bank of Chicago v. Stramer
, 218 Ill. App. 3d 905, 907-08, 578 N.E.2d 1165 (1991).  Where a contract expressly covers the entire subject matter, however, and does not provide for a lien, a lien will not be inferred.  
Stramer
, 218 Ill. App. 3d at 908.  The tendency is to limit rather than extend the doctrine of equitable liens.  
First Bank of Roscoe v. Rinaldi
, 262 Ill. App. 3d 179, 190, 634 N.E.2d 1204 (1994).
  The Brandess/Lopez purchase agreement contained a clause stating that the written contract contained all of the terms related to purchase of the property.  The purchase agreement did not contain any provision stating that the subject premises stood as security.  Although equitable liens may be imposed in the absence of an express agreement where fairness or justice dictate, there must be some basis for the intervention of equity, such as the absence of an adequate remedy at law.  
Rinaldi
, 262 Ill. App. 3d at 190.  Such was not the case here, where Lopez could, and did, bring an action for breach of contract which also included his request for specific performance.  We thus conclude that the imposition of an equitable lien is foreclosed here by the terms of the contract itself.

Lopez next contends that even if the doctrine of conventional subrogation applies, LaSalle's priority lien should be limited to $150,000, the principal amount of the Parkway mortgage.  LaSalle, in its motion for summary judgment, requested that the court find LaSalle's lien interest in the subject premises superior to Lopez' vendee's lien to the extent of Parkway's prior interest.  The court granted LaSalle's motion.  The subsequent judgment LaSalle submitted to the court awarded LaSalle a priority lien claim in the amount of the Parkway interest ($150,000), and added interest, late charges, attorney fees, and certain costs.  With those added charges, the trial court ultimately awarded LaSalle a lien claim with priority over any interest Lopez had in the subject premises in the amount of $220,669.

Lopez, on appeal, contends that any amount of the judgment in excess of $150,000 was wrongfully approved by the trial court.  According to Lopez, where LaSalle relied upon an equitable doctrine rather than a recorded mortgage agreement to obtain priority over Lopez, LaSalle is not entitled to claim its contractual attorney fees, costs, and interest.

As noted earlier, the trial court failed to determine the validity of Lopez' purported lien.  We have determined, however, that the doctrine of equitable conversion was inapplicable and thus Lopez had no valid vendee's lien.  Where Lopez had no lien, LaSalle did not need to rely on the equitable doctrine of conventional subrogation to gain priority over Lopez.  LaSalle's recorded mortgage was superior and entitled LaSalle, pursuant to its terms, to  interest, fees, and costs.  The trial court did not err in granting LaSalle its contractual attorney fees, costs, late charges, and interest.

Lopez next contends that the trial court erred in entering the judgment of foreclosure and sale without adjudicating count I of the Lopez counterclaim.  Count I of the Lopez counterclaim was titled "Specific Performance/Breach of Contract."  A party seeking specific performance of a contract must be ready, able, and willing to pay any sum due and to comply with his portion of the contract.  
Dodds v. Giachini
, 79 Ill. App. 3d 358, 362, 398 N.E.2d 205 (1979), 
rev'd on other grounds
 84 Ill.2d 284, 
418 N.E.2d 704
 (1981)
.  Although Lopez alleged that he was ready, willing, and able to pay Brandess for completion of construction of the home, it was acknowledged at oral arguments that because Brandess was in bankruptcy, it would be unable to complete the construction even if ordered to do so by the court.  Therefore, specific performance of the actual contract entered into by Brandess and Lopez was impossible.  "When it is out of the power of a party to a contract to perform his agreement, such fact necessarily constitutes a sufficient reason for the court to refuse to decree specific performance, for the reason that the decree would be nugatory because of the impossibility of its execution."  
Burke v. Mierenfeld
, 300 Ill. 188, 192, 132 N.E. 799 (1921).

Despite Lopez' allegation that he was ready, willing, and able to pay Brandess for completion of construction of the home
, the trial court noted, and counsel for Lopez acknowledged, that the count did not actually request specific performance of the purchase contract between Lopez and Brandess.  The original contract had stated that Brandess would convey the lot, improved with a completed custom home, to Lopez for the sum of $519,000.  
Instead, Lopez 
requested in count I that the court order Brandess and trustee First American to prepare and convey a deed to the subject premises to Lopez in return for Lopez paying to Brandess the judicially determined purchase price attributable to the property and construction completed to that point.  This was not actually a request for specific performance, as it did not seek enforcement of the original purchase contract or even a certain portion of the original contract.  The trial court noted as much, holding that Lopez was not asking for specific performance and that the count was going to be either denied or dismissed.  Shortly thereafter, however, the trial court held that the specific performance count would remain pending as the foreclosure moved forward.

"[T]he function of a court in a suit for specific performance is to enforce a contract as made by the parties and not to make a contract for them and then enforce the contract thus made."  
Dodds
, 79 Ill. App. 3d at 364.  We find that where actual specific performance of the purchase contract was impossible and the relief requested was for performance under terms not reflected in the actual contract, the trial court should have adjudicated the count by dismissing the specific performance claim.  Pursuant to our authority under Supreme Court Rule 366 (155 Ill. 2d R. 366(a)(5)), we dismiss count I of Lopez' counterclaim seeking specific performance.

In this consolidated appeal, Lopez also objects to the trial court's order confirming the judicial sale.  Lopez argues that the trial court erred in failing to determine the amount and priority of any interest Lopez had in the subject premises and in failing to adjudicate his claim for specific performance before confirming the judicial sale.  LaSalle responds that Lopez' objections to the judicial sale are without merit and provide no legal basis for vacating the confirmation of sale.  We agree with LaSalle that Lopez has merely reiterated arguments from his appeal of the order of foreclosure.  Moreover, those arguments have already been addressed and disposed of earlier in this opinion.  We have previously determined that Lopez cannot prevail on his specific performance claim and have found that Lopez did not acquire a valid vendee's lien through application of the doctrine of equitable conversion.  Therefore, the trial court's order confirming the judicial sale was appropriate and is affirmed.

In accordance with the above, we affirm the trial court's finding that the doctrine of conventional subrogation gave LaSalle a priority lien to the extent of the $150,000 Parkway mortgage, the court's grant of LaSalle's motion for summary judgment, and its grant to LaSalle of interest, late charges, attorney fees, and costs.  We also affirm the trial court's order confirming the judicial sale of the subject premises.  Finally, count I of Lopez' counterclaim seeking specific performance is dismissed.

Affirmed as modified.

COUSINS and GORDON, JJ., concur.

FOOTNOTES
1: We note that Lopez, in his reply brief on appeal, has included a copy of the bankruptcy court's order to modify stay, along with a cover letter dated February 27, 1998 (the day after the court orally noted it had no copy of the stay), forwarding the copy of the stay to the trial court in this case.